724 A.2d 916

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William WALLACE, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 25, 1996.

Decided Jan. 22, 1999.

398

400

Peter K. Darragh, Hickory, for W. Wallace, Jr.

Michael J. Fagella, Washington, Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

This is a direct appeal from the Order of the Court of Common Pleas of Washington County denying post-conviction relief in a capital case.[1] For the reasons presented herein, we affirm.

On August 17, 1979, Henry Brown and Appellant William Wallace, Jr. robbed Carl's Cleaners in Cannonsburg, Pennsylvania. In the course of the robbery, Appellant shot and killed the store owner, Carl Luisi, Sr., and a fifteen-year-old employee, Tina Spalla. Appellant was arrested on August 20, 1979, and Brown was apprehended shortly thereafter.

Trial commenced on December 3, 1980, but a mistrial was declared when the jury proved unable to reach a unanimous verdict. On February 2, 1981, a second trial began. Appellant was subsequently convicted of robbery, criminal conspiracy, first-degree murder for the killing of Tina Spalla, and second-degree murder for the killing of Carl Luisi, Sr.. The jury returned a sentence of death for the first-degree murder conviction. On direct appeal, however, this Court reversed and remanded for a new trial. See Commonwealth v. Wallace, 500 Pa. 270, 455 A.2d 1187 (1983). Consequently, on October 21, 1985, Appellant's third jury trial commenced. At this trial, Henry Brown, Appellant's accomplice, who had not testified at the first two trials, testified against Appellant. Appellant was again convicted of first- and second-degree murder, robbery, and conspiracy. The jury again returned a sentence of death, which the court formally imposed on April 14, 1987.[2] On

---

1. In death penalty cases, the denial of a petition for post-conviction relief is directly appealable to this Court pursuant to 42 Pa.C.S. § 9546(d).

2. Appellant received a consecutive sentence of life imprisonment for the second-degree murder conviction and a concurrent term of five to ten

appeal, this Court affirmed the judgments of sentence. *See Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989).

On June 12, 1995, Appellant filed a *pro se* petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After the appointment of counsel and the filing of an initial amended petition, a second amended petition was filed on September 1, 1995. A hearing was held on November 6, 1995, after which the PCRA court denied relief. Pursuant to 42 Pa.C.S. § 9546(d), Appellant then appealed to this Court.

> To be eligible for PCRA relief, Appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in [42 Pa.C.S.] section 9543(a)(2) and that his issues have not been previously litigated. An issue is deemed finally litigated for purposes of the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). If the allegations of error have not been finally litigated, Appellant must also demonstrate that those allegations of error have not been waived or that, if waived, either the conditions listed in section 9543(a)(3)(ii) or (iii) are met. 42 Pa.C.S. § 9543(a)(3). An issue is deemed waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, [or] on appeal ..." 42 Pa.C.S. § 9544(b). Finally, Appellant must demonstrate that the failure to litigate the issue prior to, or during trial, or on direct appeal could not have resulted from any reasonable tactical decision of counsel. 42 Pa.C.S. § 9543(a)(4).

*Commonwealth v. Banks,* 540 Pa. 143, 148–49, 656 A.2d 467, 469–70 (footnotes omitted), *cert. denied,* 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995).[3]

years in prison for the conspiracy conviction. No sentence was imposed for the robbery conviction because it merged with the second-degree murder conviction for sentencing purposes.

**3.** Section 9543(a)(3) of the PCRA was amended in 1995. Prior to the amendments, Section 9543(a)(3) provided:

404

Two of Appellant's claims have been previously litigated. First, Appellant argues that the trial court erred in allowing Henry Brown to testify because his testimony was improperly obtained by the prosecution in return for a second plea agreement and a reduced sentence offered after Brown was allowed to withdraw his original guilty plea. As Appellant concedes, *see* Appellant's Br. at 54, this claim was raised and disposed of by this Court on direct appeal. *See Wallace*, 522 Pa. at 312, 561 A.2d at 726 (admission of Brown's testimony was "harmless" because "every aspect of the bargain between Brown and the prosecution was presented to the jury in painstaking detail"). Accordingly, the claim is not reviewable under the PCRA. *See* 42 Pa.C.S. § 9543(a)(3).

Second, Appellant argues that the trial court erred in not permitting him to impeach the testimony of Anita Johnson and Henry Brown with a prior inconsistent statement by Ms. Johnson, Brown's girlfriend. Appellant is referring to a written statement given to State Troopers by Ms. Johnson wherein she stated that Brown had told her that he killed Tina Spalla. As above, this claim was disposed of by this Court on direct appeal. *See Wallace*, 522 Pa. at 310, 561 A.2d at 725 (finding the claim to constitute "harmless error at best"). It

(a) General rule.-To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:
 (3) that the allegation of error has not been previously litigated and one of the following applies:
 (i) the allegation of error has not been waived.
 (ii) if the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.
 (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct proceedings does not constitute a state procedural default barring Federal habeas corpus relief.
 The 1995 amendments to Section 9543(a)(3) eliminated subsections (i) through (iii) and now provides only that the petitioner must plead and prove that "the allegation of error has not been previously litigated or waived." *See* 42 Pa.C.S. § 9543(a)(3). However, since these amendments were not effective until 60 days after the date of enactment on November 17, 1995, and Appellant filed his PCRA petition on June 12, 1995, they are not applicable to this appeal.

is therefore not reviewable under the PCRA.[4] *See* 42 Pa.C.S. § 9543(a)(3).

Appellant also argues that the PCRA court erred in concluding that a number of the issues raised in his PCRA petition have been waived. He contends that this Court must review all of his issues on the merits, despite any waiver, in accordance with our relaxed waiver rule in capital cases. In *Commonwealth v. Albrecht*, however, this Court held that "while it has been our 'practice' to decline to apply our ordinary waiver principles in capital cases, we will no longer do so in PCRA appeals." *Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998) (citations omitted). This holding was based in part on the recognition that the very terms of the Post Conviction Relief Act exclude waived issues from the class of cognizable PCRA claims. *Id.*; *see also* 42 Pa.C.S. § 9543(a)(3) (to be eligible for relief under the PCRA, a petitioner must prove that the allegation of error has not been waived). Thus, under *Albrecht*, the relaxed waiver rule is no longer applicable in PCRA appeals and therefore, any claims that have been

4. Appellant also argues that the trial court erred by not permitting the testimony of State Troopers Richard F. Palmer and Robert L. Dugan, the officers who took Anita Johnson's statement. He claims that their testimony would have impeached Ms. Johnson because it would have "bolster[ed] the credibility and reliability of the [prior inconsistent] statement." Appellant's Br. at 25.

This claim is speculative. As Appellant's brief makes clear, the trial court did not issue a ruling on the admissibility of the testimony of Troopers Palmer and Dugan:

It is assumed that the trial court would also have excluded the testimony of [Palmer and Dugan].... Had Ms. Johnson testified denying the out-of-court declaration, then trial counsel could have presented the testimony of [Palmer and Dugan] to authenticate and substantiate the writing and to bolster the credibility and reliability of the subject statement.

*Id.* Thus, it appears that the trial court never actually barred the testimony of the State Troopers because the issue was simply not reached at trial. There is therefore no trial court ruling to be reviewed by this Court.

In any event, we have previously determined that the exclusion of Ms. Johnson's prior statement was "harmless error at best." *Wallace*, 522 Pa. at 310, 561 A.2d at 725. Accordingly, a refusal by the trial court to allow the Troopers' testimony, which would have simply reiterated the contents of Johnson's statement, would have been harmless error as well. No relief is due.

waived by Appellant are beyond the power of this Court to review under the terms of the PCRA.[5]

■ Appellant, however, also presents several claims of the ineffective assistance of trial counsel. Since the PCRA petition marked the first opportunity Petitioner had to challenge the effectiveness of his trial counsel, who also represented him on his direct appeal to this Court, these claims raised in Appellant's PCRA petition are not waived. *See Commonwealth v. Morales*, 549 Pa. 400, 409, 701 A.2d 516, 520 (1997) (waiver will be excused under the PCRA if appellant makes proper claim of ineffective assistance of counsel); *Commonwealth v. Griffin*, 537 Pa. 447, 454, 644 A.2d 1167, 1170 (1994) (in order to preserve ineffectiveness claims under PCRA, claims must be raised at earliest stage in proceedings at which allegedly ineffective counsel is no longer representing the

5. Appellant raises several claims of trial court error that have been waived. Specifically, Appellant claims that the trial court erred: 1) by denying his motion challenging the composition of the jury array; 2) by allowing Henry Brown and Anita Johnson to testify that Appellant possessed a .32 caliber handgun; 3) by allowing the testimony of Olen Clay Gorby, who was incarcerated with Appellant prior to his first trial, regarding Appellant's admissions to him, in violation of his Sixth Amendment rights; 4) in its instructions to the jury regarding the finding of mitigating circumstances and 5) in recording a sentence of death because the jury found an aggravating circumstance not listed in 42 Pa.C.S. § 9711(d). Because these claims could have been raised on Appellant's direct appeal from his convictions in the third trial, but were not, these claims are waived. *See* 42 Pa.C.S. § 9544(b); *Wallace*, 522 Pa. 297, 561 A.2d 719 (1989). Since this Court will no longer invoke the relaxed waiver rule to reach the merits of a claim that has been waived under the explicit terms of the PCRA, we find that these claims of trial court error are not reviewable. Additionally, Appellant maintains that his convictions should be overturned because the record does not contain the verdict slip for the conspiracy conviction. Since Petitioner not only failed to raise this claim on direct appeal, but also failed to raise it in the PCRA petitions presented to the PCRA Court, it is not eligible for appellate review. *See Commonwealth v. Zillgitt*, 489 Pa. 189, 193 n. 3, 413 A.2d 1078, 1080 n. 3 (1980) (appellate court will not consider issue unless it is presented in properly filed post-conviction petition in the first instance). Likewise, Appellant's cursory contention that trial counsel was ineffective for failing to object to "incomplete" polling of the jury was not raised in his PCRA petitions and therefore, does not allow for appellate review. Appellant has failed to plead and prove that any of these waived claims meet the conditions in 42 Pa.C.S. § 9543(a)(3)(ii) or(iii).

claimant); *Commonwealth v. Johnson,* 516 Pa. 407, 412, 532 A.2d 796, 799 (1987) (orthodox method of avoiding waiver when seeking post-conviction relief has been to raise claim of ineffectiveness of trial counsel at first available opportunity, namely, at the moment when the defendant is represented by different counsel either on direct appeal or on collateral review). As such, these claims of trial counsel's ineffectiveness are reviewable under the PCRA.

To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness. *See Commonwealth v. Howard,* 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994); *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 230 (1994). In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326 (1999); *Douglas,* 537 Pa. at 597, 645 A.2d at 230. Such a showing effectively demonstrates that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," as required by Section 9543(a)(2)(ii) of the PCRA. *Kimball, supra.*[6]

Appellant's first cognizable claim of ineffectiveness involves the situs of jury selection for his third trial. Prior to Appellant's third trial, defense counsel moved for a change of venire due to concerns regarding pre-trial publicity. The motion was granted and, pursuant to Pennsylvania Rule of Criminal Pro-

6. In *Kimball,* this Court held that the language in Section 9543(a)(2)(ii) does not create a more stringent prejudice requirement for ineffectiveness claims raised under the PCRA than for those ineffectiveness claims raised on direct appeal. *Kimball,* 555 Pa. 299, 724 A.2d 326 (1999) (rejecting interpretation in *Commonwealth v. Buehl,* 540 Pa. 493, 658 A.2d 771 (1995) (plurality) that Section 9543(a)(2)(ii) establishes a more stringent prejudice requirement for ineffectiveness claims raised on collateral attack than on direct appeal).

cedure 312, the order was certified to this Court, which then designated Somerset County as the site of jury impanelment.

Appellant, an African–American, now argues that he was denied a fair trial because jury selection took place in Somerset County, which "virtually guaranteed the absence of black jurors." Appellant's Br. at 46. Appellant claims that trial counsel was ineffective for failing to request at the outset that the jury be drawn from a county with a substantial population of African–Americans.

This claim is meritless. A defendant has no right to a jury containing a certain number of members of his race. Defendants are "not entitled to the services of any particular juror but only as to twelve unprejudiced jurors." *Commonwealth v. Albrecht*, 510 Pa. 603, 618, 511 A.2d 764, 771 (1986) (quoting *Commonwealth v. Fisher*, 447 Pa. 405, 410, 290 A.2d 262, 265 (1972)), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). Given this, Appellant's ineffectiveness claim fails because his underlying claim is without merit. *See Douglas*, 537 Pa. at 597, 645 A.2d at 230.

Next, Appellant argues that trial counsel was ineffective for failing to present the alibi testimony of Ms. Loretta Buckner. Appellant claims that Ms. Buckner, his girlfriend, would have testified that Appellant was with her in Wheeling, West Virginia during the entire day of the shootings.

This claim fails. At the PCRA hearing, trial counsel testified that Appellant had been unable to decide whether he wanted to present an alibi defense. At times, Appellant wanted Ms. Buckner to testify, while at other times, he did not. Further, counsel testified that he had interviewed Ms. Buckner by telephone and concluded that she would not make a credible witness because her stories were inconsistent. Based on this, trial counsel chose not to put Ms. Buckner on the stand. It is apparent that counsel's decision had a reasonable basis in advancing Appellant's interests. Accordingly, this claim of ineffectiveness does not merit relief. *See Douglas*, 537 Pa. at 597, 645 A.2d at 230–31.

Appellant next argues that trial counsel was ineffective for failing to object to the testimony of State Trooper William Manning. During the murder investigation, Trooper Manning interviewed Ms. Connie Johnson, another girlfriend of Appellant. After speaking with Ms. Johnson, Manning proceeded to a cleaner's in Wheeling, West Virginia and retrieved a brown trenchcoat. At trial, Manning testified that this trenchcoat belonged to Appellant, which was significant because witnesses had reported seeing two black males near the crime scene, each carrying handguns and one wearing a brown trenchcoat. Appellant now argues that counsel should have objected to Manning's statement because it was clearly based on information received from Connie Johnson and was therefore inadmissible hearsay.

This claim fails. Prior to Manning's testimony, Anita Johnson testified that Appellant had been wearing the trenchcoat in question on the day of the murders. *See* PCRA Ct. Op. at 10–11. Henry Brown testified to this as well. *See id.* at 11. Thus, it is clear that Manning's statement was merely cumulative of other, properly admitted testimony. Appellant has therefore failed to establish the prejudice necessary to support an ineffectiveness claim. No relief is due. *See Douglas,* 537 Pa. at 597, 645 A.2d at 230; *Kimball, supra.*

Appellant also argues that trial counsel rendered ineffective assistance by failing to present the testimony of Cannonsburg Police Officer Paul Sharkady. On December 28, 1979, a habeas corpus hearing was held for Henry Brown. Appellant was not present. At that hearing, Sharkady testified that on the day of the murders he had seen two black males near the scene of the crime, one wearing a trenchcoat. He identified Brown as the man wearing the trenchcoat. Appellant argues that counsel should have presented Sharkady's testimony at trial in order to rebut testimony that Appellant had worn a trenchcoat on the day of the shootings.

This claim fails. At the PCRA hearing, trial counsel testified that he had spoken with Officer Sharkady prior to trial and was aware of his testimony at Brown's

habeas corpus hearing. Counsel stated, however, that Shar-kady had indicated to him that no one had ever asked him if he could identify the other man he had seen on the day of the shootings. *See* PCRA Ct. Op. at 13. Counsel therefore chose not to put Sharkady on the stand because he was concerned that, while Sharkady might identify Brown as the man in the trenchcoat, he might also identify Appellant as the other man he had seen. Given this, it is clear that counsel had a reasonable basis for not presenting Sharkady's testimony. Accordingly, no relief is due. *See Douglas,* 537 Pa. at 597, 645 A.2d at 230–31.[7]

Next, Appellant suggests that counsel was ineffective for "pronouncing to the jury, or eliciting testimony, which indicat-ed that Appellant had been previously tried for the same offenses[.]" Appellant's Br. at 54. In this claim, Appellant refers to several instances where defense counsel, while exam-ining certain witnesses, made references to a "last trial," a "prior proceeding," or a "previous trial," or made other com-ments implying that Appellant had been previously tried for the murders of Carl Luisi, Sr. and Tina Spalla.[8]

 This claim fails. As the PCRA court noted, even [a]ssuming, *arguendo,* that making or eliciting these refer-ences did constitute error, this error was harmless because

7. Appellant also claims that the prosecution engaged in misconduct and violated the dictates of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to supply the defense with the exculpatory evidence regarding Officer Sharkady's identification of Henry Brown as the man he had seen wearing the tan-colored trench-coat. This claim fails. As the PCRA court noted, even assuming that the prosecution's inaction constituted misconduct, it is clear that Appel-lant suffered no prejudice as a result because trial counsel knew of Officer Sharkady and his testimony prior to trial and could have called him as a witness. *See* PCRA Ct. Op. at 21. Further, it is questionable whether Sharkady's testimony was truly exculpatory. As noted above, trial counsel chose not to put Sharkady on the stand after concluding that the officer might very well have identified Appellant as the second man he had observed near the crime scene. No relief is due.

8. Appellant points specifically to defense counsel's cross-examinations of Donald Kemp and Henry Brown, and his direct examination of Ronald Van Ostren. *See* Appellant's Br. at 55–60 (quoting N.T. at 451–53 (Kemp), 662–73 (Brown), and 842–45 (Van Ostren)).

these few passing references buried in approximately nine hundred pages of testimony could not possibly have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." [42 Pa.C.S. 9543(a)(2)(ii).] Since these references did not prejudice [Appellant], counsel was not ineffective.

PCRA Ct. Op. at 23. Having examined the notes of testimony, we are in agreement with the conclusion of the PCRA court that Appellant was not prejudiced by counsel's references. Appellant makes no attempt to argue that the PCRA court's conclusion was somehow erroneous. Since Appellant has not asserted, much less shown, that these references created a reasonable probability that the outcome of the proceedings would have been different, no relief is due. *See Douglas*, 537 Pa. at 597, 645 A.2d at 230; *Kimball, supra.*

Appellant also contends that trial counsel rendered ineffective assistance by failing to object to certain irrelevant and prejudicial testimony relating to the shooting victims.[9] He contends that the prosecution offered this testimony to either describe the pain and suffering of the victims prior to their deaths or to put family members of the victims on the stand in order to evoke the sympathy of the jurors.[10]

9. This issue was raised in Appellant's *pro se* brief in support of his PCRA petition, which was incorporated by reference into the brief in support of Appellant's second amended PCRA petition. Given that this issue was raised in Appellant's *pro se* PCRA petition, which was the first opportunity Appellant had to challenge the effectiveness of his trial counsel, this issue is not waived.

10. Specifically, Appellant complains of the following testimony:

A.) Toni Spalla Manganas, Tina Spalla's sister, testified that she had driven Tina to work on the day of the shootings, that Tina would have entered the eleventh grade in the fall of 1979, and that after dropping her off at Carl's Cleaners, she never saw Tina alive again. *See* N.T. at 297–99.

B.) Denise Buyan, another of Tina Spalla's sisters, testified that she was working in a supermarket near Carl's Cleaners at the time of the shootings and that she ran to the Cleaners when she learned that an ambulance had arrived there. She further testified that her sister was still alive when she arrived, that she saw the ambulance crew put Tina on a stretcher, and that she then followed the ambulance to the hospital. *See id.* at 302–04.

 This claim fails. Although the relevance of some of the testimony is marginal, it is clear that none of the complained-of statements were as prejudicial as Appellant suggests. Accordingly, his ineffectiveness claim fails because he has not established that there is a reasonable probability that but for counsel's failure to object to the challenged testimony the outcome of the proceedings would have been different.

C.) Debra Ann Prater, an employee of Carl's Cleaners at the time of the killings, testified that she had worked at the Cleaners from 8:30 a.m. to 5:00 p.m. on the day of the killings, that by 5:00 p.m. the store had taken in $197.05, and that when she left at 5:00 p.m. Carl Luisi, Sr. was in the back room and Tina Spalla was in the front near the cash register. *See id.* at 308–13, 314.

D.) Carl Luisi, Jr., the son of the victim Carl Luisi, Sr., testified that he had worked for many years at his father's business and that he knew the operation well. He verified that the receipts for the day of the shootings totaled $197.05. He further stated that he had proceeded to Carl's Cleaners after being notified of the shootings and that Tina Spalla was not there when he arrived, but that his father's body was. *See id.* at 315–20.

E.) Thomas Drosdick, a customer, testified that he had entered Carl's Cleaners and had discovered Tina Spalla on the floor behind the cash register moaning and rolling slightly from side to side. He stated that he and his wife, who was a nurse, called the police, *see id.* at 321–24, and then reentered the Cleaners:

We went back in and first, I believe my wife looked at Carl, but I'm not a doctor, but he looked dead; I mean his eyes were rolled back in his sockets and there was powder burns on his chest from where he was shot. And so she went and went to Tina, who was still moving and I'm not sure what all she did. I stayed out of her way. But I believe she gave her mouth-to-mouth resuscitation.

*Id.* at 324.

F.) Karen Demark, Thomas Drosdick's wife at the time of the shootings, testified and essentially reiterated his testimony regarding their discovery of the victims. She then stated that, when she reentered the Cleaners, she found Tina Spalla "lying on her back on the floor and . . . throwing hear head back and forth and moaning." *Id.* at 329. She also described the girl's condition as she was placed into the ambulance:

Just that whenever I got up to leave her, she had a blood stain running across her chest and I know that whenever they went to put her in, they had her on a stretcher and she like went into heart failure or something; she was serious.

*Id.* at 330.

G.) William Miller, an emergency medical technician who responded to the incident, testified that when he arrived at Carl's Cleaners, Carl Luisi, Sr. was dead. He then testified as to his attempts to "stabilize" Tina Spalla and stated that she had "a lot of blood in her mouth" and was "gasping for breath" and "moaning." *Id.* at 352–54.

No relief is due. *See Douglas,* 537 Pa. at 597, 645 A.2d at 230; *Kimball, supra.*

Next, Appellant argues that trial counsel was ineffective for failing to obtain an independent ballistics analysis of the bullet recovered from the body of Tina Spalla. At trial, the prosecution's theory was that Appellant had shot both victims with a .32 caliber handgun and that Henry Brown had carried a .38 caliber handgun, but had not fired at either victim.[11] State Trooper Daryl W. Mayfield, a ballistics expert for the State Police Crime Lab, examined the bullet slugs recovered from the victims' bodies and testified that they were all .32 caliber. *See* PCRA Ct. Op. at 18 (quoting N.T. at 292). However, Dr. Ernest Abernathy, the pathologist who performed the autopsies on the victims, testified that the bullet he removed from the body of Tina Spalla appeared to him, upon visual inspection, to be .38 caliber. Appellant now argues that in light of Dr. Abernathy's testimony, and given that Brown was carrying a .38 caliber weapon, trial counsel should have ordered an independent ballistics analysis to conclusively determine the caliber of the bullet that killed Tina Spalla.

This claim is meritless. Initially, we note our agreement with the conclusion of the PCRA court that "no credible question existed as to the slug's caliber." *Id.* Dr. Abernathy is a pathologist who simply inspected the bullet visually and concluded that it was .38 caliber. Trooper Mayfield, on the other hand, is a State Police ballistics expert who performed a laboratory analysis of the bullet and determined that it was .32 caliber. In any event, it is clear that counsel's decision not to pursue an independent analysis of the bullet in question was motivated by trial strategy and had a reasonable basis in advancing Appellant's interests. As he explained at the PCRA hearing, counsel was "concerned that if we had a ballistics analysis and it was an adverse analysis, then we would lose that reasonable doubt that we thought we could create." *Id.* at 18–19 (quoting PCRA Hearing transcript at

11. Brown's .38 caliber handgun was recovered and admitted as evidence at trial, but the .32 caliber murder weapon was never found.

30–31). In light of this, Appellant's claim fails.[12] *See Doug-las,* 537 Pa. at 597, 645 A.2d at 230–31.

Finally, Appellant suggests that counsel was ineffective for failing to object when Olen Clay Gorby, who was incarcerated with Appellant prior to Appellant's first trial, testified that Appellant had asked him to smuggle a gun into the Washington County jail so that Appellant could escape and kill Henry Brown. *See* N.T. at 759. Appellant argues that this testimony was irrelevant and prejudicial and that its admission violated the dictates of *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973), wherein this Court stated that "evidence of one crime is inadmissible against a defendant being tried for another crime because the fact of the commission of one offense is not proof of the commission of another." *Peterson,* 453 Pa. at 197, 307 A.2d at 269; *see also Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977).

This claim fails. Appellant's alleged discussion with Gorby concerning his desire to escape and kill Henry Brown did not constitute criminal activity. There is no evidence of a conspiratorial agreement between Appellant and Gorby to carry out Appellant's plan and no evidence that Appellant took some action that rose to the level of criminal attempt. He merely expressed to Gorby a desire to escape from the Washington County jail so that he could silence Henry Brown. Thus, *Peterson* is inapposite to Appellant's case. And, in any event, given Gorby's testimony concerning Appellant's confession to the shootings and the testimony of Appellant's accomplice Henry Brown, it cannot be said that counsel's failure to object to the "escape plan" testimony created a reasonable probability that the outcome of the proceedings would have been different but for counsel's omission. *See Douglas,* 537 Pa. at 597, 645 A.2d at 230; *Kimball, supra.* Accordingly, no relief is due.

12. At the PCRA hearing, Appellant requested that the court provide funds for an independent analysis of the bullet. Appellant argues that the court abused its discretion in denying this request. Having found trial counsel's decision not to pursue an independent analysis to have been reasonable, we find no abuse of discretion on the part of the PCRA court. Appellant's claim fails.

Given that Appellant's claims have either been previously litigated or waived, and that those claims which are reviewable lack merit, the order of the PCRA court denying post-conviction relief is affirmed.[13]

---

**13.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).