NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1396
_____

CEDRIC BALDWIN,
                                        Appellant

v.

DAVID DIGUGLIELMO; ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA; DEPUTY PROSECUTOR YORK COUNTY DISTRICT
ATTORNEY

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-cv-1918)
District Judge:  Hon. William J. Nealon

_____

Submitted Under Third Circuit LAR 34.1(a)
December 17, 2010

Before:  JORDAN, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed : December 20, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Cedric Baldwin appeals from a January 27, 2009 order of the United States District

Court for the Middle District of Pennsylvania denying his petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we will affirm the District Court's order.

## I. Background

Baldwin was a drug dealer in rural York County, Pennsylvania, whose client base included members of William Brown's family. Wilner Saintville ("Saintville"), a multi-state drug trafficker, was a frequent overnight guest at the Brown residence and, when he visited, was the exclusive drug dealer for the residents there. One such visit by Saintville occurred in April 1999, during which time Baldwin was repeatedly rebuffed in his efforts to sell drugs to the Brown family. Meanwhile Baldwin was experiencing financial difficulties which resulted in his inability to make rent and car insurance payments.

On the afternoon of April 14, 1999, Eric Gunnet ("Gunnet") contacted Baldwin to purchase cocaine. Baldwin told Gunnet "not right now," and informed Gunnet that he would call him back later in the evening. At about 9:45 p.m. that same day, two masked and armed men entered the Brown residence and demanded money and drugs from Saintville. Saintville complied and gave the assailants between $350 and $1500. As the assailants rifled through the house looking for additional drugs and money, Saintville fled out the front door. One of the assailants followed Saintville and shot him in the abdomen. Both assailants immediately fled the scene, after which one of the residents called 911. The first officer was dispatched to the home at 9:52 p.m.

Twenty minutes later Baldwin contacted Gunnet and informed him that he had cocaine to sell. When Gunnet arrived at Baldwin's apartment to purchase the cocaine, Baldwin stated that he had had a "beef" earlier and that there had been a shooting.

2

Gunnet asked if the altercation was related to the cocaine, to which Baldwin responded "yeah."

Around midnight, Baldwin met with his friends to depart for a spring break trip to Atlanta. At that time, Kyle Hawkins asked Baldwin for $300 due for the travel accommodations. Baldwin immediately paid the $300 in cash, with money left over. The group left for Atlanta between midnight and 1:00 a.m. on April 15, 1999, and arrived at approximately 1:00 p.m. on April 15, 1999. Once in his hotel room, Baldwin threw some shell casings down on the bed in front of Kyle Hawkins's brother, Tyson Hawkins ("Hawkins"), and stated that they were "souvenirs." The shell casings possessed by Baldwin were never retrieved and were not tied to the gun used to shoot Saintville.

On May 13, 1999, Baldwin was interviewed by police and subsequently charged with one count of robbery, two counts of aggravated assault, and one count of criminal attempt to commit homicide.[1] After his first trial resulted in a hung jury, Baldwin's second trial resulted in a verdict of guilty for robbery and aggravated assault, for which he was sentenced to 20-40 years' imprisonment. His judgment of sentence was affirmed by the Pennsylvania Superior Court, after which Baldwin filed a Post Conviction Relief Act ("PCRA") petition, alleging ineffective assistance of counsel based in part on his trial counsel's failure to object to Hawkins's testimony regarding the shell casings. Both the PCRA court and the Pennsylvania Superior Court determined that Hawkins's testimony

---

[1] Baldwin was initially charged with three counts of robbery, two counts of aggravated assault, three counts of simple assault, three counts of recklessly endangering another person, one count of burglary, and one count of theft by unlawful taking. The charges were modified before trial, however, as outlined above.

regarding the shell casings was relevant and admissible and that Baldwin's counsel was not ineffective by failing to object to that testimony. Baldwin's subsequent petition to the Pennsylvania Supreme Court was denied on May 25, 2007.

On October 22, 2007, Baldwin filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The District Court denied Baldwin's habeas corpus petition without a hearing, and he timely appealed.

## II.    Discussion[2]

We apply a plenary standard of review when a district court rules on a habeas petition without conducting an evidentiary hearing. *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). Therefore, we "review the state courts' determinations under the same standard that the District Court was required to apply." *Id.* (citing *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009) (internal quotations omitted)). Pursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted by a federal court on a claim that has been "adjudicated on the merits" in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 2254 and 2241, and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

4

On appeal, Baldwin argues that he was denied his right to effective assistance of counsel when his attorney failed to object to testimony that Baldwin contends was "irrelevant" and "highly prejudicial." *Strickland v. Washington* sets forth the standard for establishing an ineffective assistance of counsel claim. 466 U.S. 668 (1984). Thus, our inquiry is whether the Pennsylvania Superior Court's decision was either contrary to or an unreasonable application of *Strickland*. [3]

Under *Strickland*, to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense such that it undermined confidence in the outcome of the trial. *See id.* at 687, 694. "The standard by which we judge deficient performance is an objective standard of reasonableness, viewed to the extent possible from the attorney's perspective at the time, without 'the distorting effects of hindsight.'" *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001) (citing *Strickland*, 466 U.S. at 688-90).

Here, Baldwin contends that his trial counsel should have objected to Hawkins's shell casings testimony because no ballistics evidence linked the shell casings to the weapon used in the shooting of Saintville and, therefore, the testimony was irrelevant.

---

[3] In denying Baldwin's ineffective assistance of counsel claim, the Pennsylvania Superior Court applied the test articulated in *Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999), rather than *Strickland*. This Court has held that the *Wallace* test is not contrary to *Strickland*, however. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Accordingly, while we address Baldwin's claim under *Strickland*, our result would be the same were we to address it under *Wallace*, as the state court did.

5

Baldwin also maintains that the admission of this testimony was highly prejudicial, as it had the effect of creating the impression that he was a dangerous and violent person.

After a careful review of the record, we do not find trial counsel's failure to object to Hawkins's testimony to be an unreasonable lapse amounting to constitutionally deficient performance. The record demonstrates a strong temporal connection between the shooting – which occurred only hours before Baldwin left for Atlanta – and Baldwin's subsequent possession of shell casings in his Atlanta hotel room. Accordingly, the testimony regarding the shell casings was relevant, if perhaps weakly, as evidence that Baldwin had used a firearm prior to leaving for Atlanta. *See Government of Virgin Islands v. Joseph*, 685 F.2d 857, 860 n.1 (3d Cir. 1982) (finding that "the prior possession of a gun can be relevant to opportunity even without the subsequent matching up of the gun with the one used in the crime"). Because we find trial counsel's failure to object to Hawkins's testimony does not rise to the level of deficient performance, we are satisfied that the state courts' rejection of Baldwin's ineffective assistance of counsel claim was not based on an unreasonable application of *Strickland*.[4]

---

[4] Because we have found trial counsel's failure to object to the testimony of Hawkins not to be deficient, we need not address the second prong of the *Strickland* analysis. Even if we were to find trial counsel's performance deficient however, we would not find that the deficiency undermined confidence in the outcome of the trial. The record demonstrates that there was ample evidence indicative of Baldwin's guilt, including his inability to sell drugs to Gunnet prior to the shooting but his subsequent ability to do so less than twenty minutes after the shooting; his comments to Gunnet, immediately after the shooting, in which he stated that he had been involved in a "beef" where there had been a shooting that related to cocaine; and his ability to pay for travel accommodations immediately after the shooting occurred, despite his financial

## III. Conclusion

For the foregoing reasons, we will affirm the District Court judgment.

---

difficulties. In light of this and other evidence, the result of the trial would not likely have been different even had Hawkins's testimony been objected to and excluded.