J-S12021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT KEITH, | |
| Appellant | No. 1868 EDA 2015 |

Appeal from the PCRA Order of June 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-52-CR-0012205-2009

BEFORE:  MUNDY, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 08, 2016**

Appellant, Robert Keith, appeals from the order entered on June 2, 2015, dismissing his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court ably explained the underlying facts of this case:

> The instant matter arises out of an incident that occurred on June 27, 2009, at the Piazza [Apartment Complex], located in [the] Northern Liberties section of Philadelphia[.  The incident] culminated in the [robbery, shooting, and murder] of Timothy Gilmore and Rian Thal. . . .
>
> The genesis of the [crimes] can be traced to events that began in early June [] 2009[,] when [] Leon Woodward contracted to have a large amount of cocaine delivered to Thal's apartment[, which was] located inside of the Piazza Apartment Complex[.  The Piazza Apartment Complex is] located at 1050 N[orth] Hancock Street.  The delivery occurred on June 26, 2009, and was witnessed by both Woodward and Vernon Williams[.  Williams was a drug]

---

*Retired Senior Judge assigned to the Superior Court.

dealer who, purportedly, was going to buy three kilograms of the cocaine.

Upon seeing the cocaine, Williams contacted Keith Epps and the men agreed to rob the cocaine. Epps was friends with a woman named Katoya Jones. . . .

[Epps enlisted Appellant in the scheme. At approximately 3:45 a.m. on] June 27, 2009, Epps [and Appellant] entered the building with Jones' assistance. . . . Instead of going to Thal's apartment[,] both men broke into a vacant apartment located a floor below Thal's [apartment]. Both men then left the building.

Later that day, three other men entered the building with Jones' assistance. The men, Antonio Wright, Donnell Murchison, and Edward Daniels, immediately proceeded to the seventh floor of the building where Thal's apartment was located. The men encountered Thal and Gilmore in the hallway and after Gilmore began struggling with Wright, Wright and Murchison shot and killed Gilmore and Thal.

PCRA Court Opinion, 8/25/15, at 2-3.

On November 8, 2011, Appellant entered an open guilty plea to burglary, criminal conspiracy, criminal trespass, and possessing instruments of crime.[1] During the plea hearing, Appellant admitted to the following facts:

Were [the Commonwealth] to prove this case, at sometime around 3:00 a.m. on June [27, 2009], the apartment, 617, located at 1050 North Hancock [Street] was broken into without permission. . . .

---

[1]  18 Pa.C.S.A. § 3502(a), 903(a)(1), 3503(a)(1)(i), and 907(a), respectively.

[The Commonwealth] would also prove that [Appellant] told in a statement to Detective Pitts what his involvement was in this incident. . . . I will read verbatim. . . .

Question[:] [Appellant] . . . did you know the people who were killed inside the apartment at 1050 North Hancock Street [on] June [27,] 2009?

Answer[:] No, I have never met them before.

Question[:] Have you ever been to that location in the past?

Answer[:] Earlier that day I had met with a friend of mine that goes by the name of Pooh, which was later identified as Mr. Epps. Before that I was at a bar called Buffy's off of Hunting Park Avenue, and some peoples were saying that a guy by the name of Zah had the bricks for 31. That means he was selling drugs for and keys of cocaine for $31,000[.00]. . . . I never met Zah. I had heard his name before in the past.

I left there and then I met with [Epps] at the gas station at Ridge and Midvale Streets. It was that night maybe around 8:00 p.m. to 9:00 p.m., he asked me if I wanted some easy money and I told him yeah. Then I left from the gas station. I had a black Caddy. We had talked about 20 minutes and then [Epps] left. He had a car, but I don't know what kind. It was parked across the street somewhere.

I called him back around 12:00 a.m. and he told me to wait for a little later because they were going out to Onyx on Columbus Boulevard. He said the guy whose money we were going to take was from out of town. He said he was going to some girl and he would meet back up with me. I asked him how much money he was talking and he told me over $400,000[.00]. He told me that it was going to be easy. He told me all of this while we were at the gas station.

He then called me around 2:30 or 3:00 [a.m.] and asked me to meet him at 8th and Spring Garden. I drove a green Denali there. . . . He was on the corner when I got there. He told me that the girl had dropped him off. He went

- 3 -

down Hancock Street. We parked in the parking lot across the street. We both get out of the car and I saw a green Crown Vic and a black truck and a guy who dropped someone off in a black Grand Prix. He dropped the guy off and the guy went in on his own and the Grand Prix drove off. The guy kept circling around the street. Before the guy in the Grand Prix drove off he got out of the car and was talking and started to talk loud. He was like reaching, I told him that we were going to talk to some girl, and him and [Epps] had some words and then he finally drove off.

Me and [Epps] went to the front door and there was a black girl and she was waiting inside of the lobby door and she let us in. We took the elevator to the second floor and went to her apartment, which was empty. The three of us were in there for about ten minutes and then she left out and she said she had to go to work. When she left me and [Epps] we were talking and he said she had to get something. He mentioned like $20,000[.00].

Then me and [Epps] go up to the 6th floor because that is where the guy's apartment with the money was supposed to be. And before I went to the 6th floor I went outside to my car and got a wonderbar to pry the door open. I went back inside, [Epps] let me in. We went to the 6th floor and went to 615 or 617 and I broke the door down and there was no one in there and there was no money. There was nothing in there.

We went out of the apartment and [Epps] called someone on the phone and was telling them that they had given him the wrong floor. The person on the phone was telling [Epps] that the white girl was coming. I guess that meant the girl got killed was coming. He said, how can you not know the difference between the 6th and the 7th floor. I told him that I was leaving and he left with me. We got into my car and I dropped him off at 8th and Spring Garden Street.

N.T. Plea Hearing, 11/8/11, at 9-13.

Appellant proceeded to a sentencing hearing on April 13, 2012. During this hearing, the trial court stated on the record that the guideline

ranges for Appellant's burglary conviction were 15 to 21 months in prison, plus or minus six months. N.T. Sentencing Hearing, 4/13/12, at 2-3. The trial court then sentenced Appellant to serve a term of six to 12 years in prison for the burglary conviction, followed by a term of four years of probation for the criminal conspiracy conviction.[2, 3, 4] *Id.* at 7-8. The trial court stated its reasons for sentencing Appellant as follows:

> It seems like you are making the right decision. This is a serious offense but I tried this case here. It was a horrible, horrible case. You had nothing to do with that. You got involved because you wanted to make some money and maybe you realize now by making fast money, you are going to break into a place, steal money and maybe drugs but I want to point out other members of this Piazza [Apartment Complex] case came back and got involved in a homicide, came back with the intention to rob. There is no indication that this is a case in which the [burglary] spilled over, where [Appellant's] involvement spilled over or in any way [was] involved with the Piazza [Apartment Complex] homicide, Piazza [Apartment Complex robbery].

*Id.* at 6-7.

---

[2] The trial court imposed no further penalty for the criminal trespass and possession of an instrument of crime convictions. N.T. Sentencing Hearing, 4/13/12, at 8.

[3] The trial court ordered that Appellant serve his sentence of imprisonment concurrently with the federal sentence that he was then serving. N.T. Sentencing Hearing, 4/13/12, at 7-8.

[4] During the sentencing hearing, Appellant's trial counsel requested that the trial court sentence Appellant to a term of five to ten years in prison for the convictions. N.T. Sentencing Hearing, 4/13/12, at 3-4.

Appellant did not file a post-sentence motion or a direct appeal from his judgment of sentence.

On October 5, 2012, Appellant filed a timely, *pro se* PCRA petition where he claimed that he was entitled to relief because:

> My lawyer didn't argue to get my sentence to my guidelines. I was sentence over my guidelines. I also asked him to argue why I was being charge for my crime. I was charge with a crime of violence. I should been drop to a criminal trespass not a violence burglary.

Appellant's *Pro Se* PCRA Petition, 10/5/12, at 3.

The PCRA court appointed counsel to represent Appellant and, within the later-filed amended PCRA petition, Appellant raised the following claim for relief:

> [] After sentencing[, Appellant] requested that his [plea counsel] file a post-sentence motion seeking reconsideration of his sentence;
>
> [] [Appellant] was denied his rights to due process and effective counsel, under the laws and Constitutions of the United States and Pennsylvania, as [Appellant's plea counsel] failed to file a post-sentence motion as there were legitimate grounds for relief.

Appellant's Amended PCRA Petition, 1/3/14, at 2.

Appellant requested that the PCRA court hold an evidentiary hearing "to determine whether [plea] counsel was ineffective for failing to file a post[-]sentence motion" and to reinstate Appellant's right to file a post-sentence motion *nunc pro tunc*. **Id.** Moreover, Appellant attached a memorandum to his amended PCRA petition, where Appellant further

explained the basis for his claims. Within this memorandum, Appellant argued that his plea counsel was ineffective for failing to file a post-sentence motion because: 1) he requested that his plea counsel file a post-sentence motion to challenge the discretionary aspects of his sentence; 2) plea counsel failed to file the motion; and, 3) the motion would have been successful because, at sentencing, the trial court both failed to consider the sentencing guidelines and sentenced Appellant outside of the guideline ranges but failed to place adequate reasons on the record for its sentence.[5] Memorandum to Appellant's Amended PCRA Petition, 1/3/14, at 1 and 5-6.

On April 8, 2015, the PCRA court provided Appellant with notice that it intended to dismiss the PCRA petition in 20 days, without holding a hearing.

---

[5] Within the memorandum of law Appellant attached to his amended PCRA petition, Appellant argued that his plea counsel was also ineffective for failing to file a direct appeal on his behalf. *See* Memorandum to Appellant's Amended PCRA Petition, 1/3/14, at 1 and 8-10. Appellant did not plead any such claim in his actual PCRA petition and the PCRA court did not consider the claim in its opinion to this Court. *See* Appellant's *Pro Se* PCRA Petition, 10/5/12, at 3; Appellant's Amended PCRA Petition, 1/3/14, at 1-2; PCRA Court Opinion, 8/25/15, at 1-7. Therefore, the claim is waived. **Commonwealth v. Williams**, 899 A.2d 1060, 1066 n.5 (Pa. 2006) ("[the a]ppellant also argues trial counsel's failure to obtain DNA testing violated his confrontation and discovery rights under Article 1, § 9 of the Pennsylvania Constitution. [The a]ppellant did not raise these issues in his PCRA petition, so they are waived"); **Commonwealth v. Wallace**, 724 A.2d 916, 921 n.5 (Pa. 1999) (holding that a failure to raise a claim "in the PCRA petitions presented to the PCRA court" waives the claim for purposes of appellate review); **Commonwealth v. Rainey**, 928 A.2d 215, 226 (Pa. 2007) (same); *see also* 42 Pa.C.S.A. § 9543(a) ("[t]o be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence all of the following. . ."); Pa.R.Crim.P. 902 ("Content of Petition for Post-Conviction Collateral Relief").

*See* Pa.R.Crim.P. 907(1). The PCRA court finally dismissed Appellant's PCRA petition on June 2, 2015 and Appellant filed a timely notice of appeal. *See* Docket Entry, 6/2/15, at 1. Appellant raises one claim on appeal:

> Did the [PCRA] court err in denying PCRA relief without holding an evidentiary hearing to determine whether counsel was ineffective for failing to file post[-]sentence motions?

Appellant's Brief at 9 (some internal capitalization omitted).

As we have stated:

> [t]his Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. We may affirm a PCRA court's decision on any grounds if it is supported by the record.

***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010) (internal citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Id.***

As our Supreme Court has held, "the failure to file post-sentence motions does not fall within the limited ambit of situations where a [petitioner] alleging ineffective assistance of counsel" is entitled to a presumption of prejudice. ***Commonwealth v. Liston***, 977 A.2d 1089, 1092 (Pa. 2009). Rather, our Supreme Court held, a petitioner claiming that counsel was ineffective for failing to file a post-sentence motion must "rebut the presumption of [counsel's] effectiveness by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Commonwealth v. Reaves***, 923 A.2d 1119, 1131 (Pa. 2007) (internal quotations and citations omitted). Further, the Supreme Court held, in the context of a challenge to the discretionary aspects of one's sentence, prejudice may be established

only by pleading and proving that the challenge would have resulted in "**a reduction in the sentence**." *Id.* at 1032 (emphasis added).

Here, the PCRA court judge was the same judge that accepted Appellant's guilty plea and imposed Appellant's judgment of sentence. As the PCRA court judge explained, even if Appellant's plea counsel had filed a timely post-sentence motion and claimed that the judge failed to consider the sentencing guidelines and failed to place adequate reasons on the record for the sentence,[6] the trial judge would not have reduced Appellant's sentence. As the PCRA court explained:

> The sentence imposed on [Appellant] was the result of careful consideration of the facts of the case, the contents of the pre-sentence reports, and [Appellant's] evidence and personal circumstances. Consequently, there was nothing either [plea] counsel or [Appellant] could have said to convince [the trial court] to impose a lesser sentence than the one imposed on him. While the sentence imposed on [Appellant] did exceed the recommended sentencing range, the sentence was appropriate because [Appellant] participated in a failed robbery inside an apartment building

---

[6] A claim that the trial court failed to adequately consider the sentencing guidelines and a claim that the trial court sentenced a defendant outside of the guideline ranges, but failed to place adequate reasons on the record for its sentence, are both challenges to the discretionary aspects of a sentence. *See Commonwealth v. Smith*, 534 A.2d 836, (Pa. Super. 1987) (a claim that "the trial court abused its discretion because it failed to consider the sentencing guidelines in imposing sentence" is a challenge to the discretionary aspects of a sentence); *Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa. Super. 2012) (claim that the "sentencing court violated the Sentencing Code by failing to state sufficient reasons for imposing a sentence outside the sentencing guidelines" is a challenge to the discretionary aspects of a sentence).

filled with people. But for his and Epps['] incompetence, it is clear that he and Epps would have committed a violent robbery. Moreover, despite being aware of the [robbery] plan[, Appellant] did not contact the authorities thereby allowing the double homicide to occur.

PCRA Court Opinion, 8/25/15, at 6 (internal footnote omitted).

Thus, even if Appellant's plea counsel had filed a post-sentence motion in this case, the trial court would not have reduced Appellant's sentence. As such, Appellant cannot prove that he was prejudiced by counsel's alleged ineffectiveness. **Reaves**, 923 A.2d at 1132. Therefore, the PCRA court did not err when it dismissed Appellant's PCRA petition without holding a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2016