J-S31024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
LAMAR ALLEN, :
:
Appellant : No. 2299 EDA 2013

Appeal from the PCRA Order Entered August 5, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0010365-2009.

BEFORE: BOWES, SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED AUGUST 29, 2014**

Appellant, Lamar Allen, appeals from the order entered on August 5, 2013, that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court set forth the relevant facts of this case as follows:

> The evidence presented at the suppression hearing is summarized as follows. On June 27, 2009, between 2:30 and 3:00 a.m., Officer Davis of the Philadelphia Police Department responded to a call of a robbery near 17th and Pine Streets, in the city and county of Philadelphia, Pennsylvania. Upon arriving on the scene, the officer spoke to the robbery victims ("complainants") — Marisa Guaglione Stevens, Glenn Stevens, and Christopher Guaglione.[1] Based on information supplied by the complainants, Officer Davis submitted a "flash" description of the robbery suspect(s) over police radio. (N.T. 2/1/10, pp. 74-77).

[1] Glenn Stevens ("Mr. Stevens") is the husband of Marisa Guaglione Stevens (Mrs. Stevens). Christopher Guaglione is Mrs. Stevens' brother.

At the time of the robbery, Sergeant Dominick Cole was working bike patrol near 5th and South Streets, in the city and county of Philadelphia, Pennsylvania. While directing traffic, Sergeant Cole observed a gray Yukon vehicle turn the wrong way on 5th Street. The officer signaled the vehicle to pull over so he could issue a traffic summons, and the vehicle's driver complied. (Id., pp. 16-19, 38).

Sergeant Cole approached the driver's side of the vehicle while another officer (Officer Rivera) approached the passenger side. Appellant was the sole passenger in the vehicle. Sergeant Cole asked the driver for his license, registration and insurance information, but the driver "was unable to produce any vehicle information or a driver's license." The driver gave Sergeant Cole what he asserted to be his name, but when the officer checked this name with the Department of Motor Vehicles (DMV), the DMV reported that no driver's license had been issued under the name. (Id., pp. 20-21).

At this point, Sergeant Cole requested the driver to exit the vehicle and advised that the car would be impounded pursuant to Philadelphia's "Live Stop Program." Because the DMV reported that no license had been issued under the driver's name, Officer Cole "informed him that the officers would have to inventory the vehicle, which is part of the Live Stop procedure." (Id., p. 21).[2]

[2] The driver eventually provided Sergeant Cole another name, and the DMV reported that a driver's license had been issued under this second name. (Id., p. 39).

While Sergeant Cole and Officer Rivera escorted the driver to the vehicle's rear, Officer Rivera observed a "hoodie" sweatshirt on the vehicle's rear, driver's side seat, with a wallet "sticking out of it." Officer Rivera retrieved the hoodie, opened the wallet, and saw that it contained the driver's license of a white male who resided near 17th and Pine Streets. Upon

inquiring over police radio whether any robberies recently occurred in that area, the officers learned that one had just occurred at 17th and Pine Streets. Sergeant Cole therefore requested that the robbery victims be brought to 5th and South Streets for purposes of identification. (Id., pp. 23-24, 42-43).

By this time, another officer, Officer Corrado, had arrived and was standing outside the Yukon's passenger side door. (Id., p. 67). When she attempted to remove Appellant from the passenger seat, a glove fell from the vehicle and landed on the pavement. Officer Corrado leaned over to retrieve the glove and observed the handle of a gun beneath the passenger seat. Officer Corrado immediately notified Sergeant Cole and Officer Rivera of her discovery, assisted them in securing Appellant in handcuffs, and recovered the weapon. (Id., pp. 68-69).[3] The officers also recovered several items from the floor of the vehicle where they discovered the gun, including several cell phones, a camera, and credit cards. (Id., pp. 27-29). After removing Appellant from the vehicle, Officer Corrado asked whether he was licensed to carry a firearm. Appellant responded "no" and stated that the gun belonged to his brother. (Id., pp. 68-69).

> [3] The handgun was a black "Smith & Wesson" loaded with ten (10) live rounds. (Id., p. 23).

In response to Officer Cole's radio call, Officer Davis transported the complainants to 5th and South Streets for possible identification. Upon seeing Appellant, all of the complainants identified him as the man who robbed them at gunpoint. Without hesitation, they immediately said, "[T]hat's him. That's the guy." (Id., pp. 77-81). The complainants also identified the gun used by Appellant in the robberies, and confirmed that the items recovered from the vehicle belonged to them. (Id., pp. 34-35).

After these positive identifications, Officer Rivera searched Appellant and recovered from his left pocket an ID and credit card belonging to Mrs. Stevens. (Id., p. 57).

Appellant provided no testimony or other evidence at the suppression hearing. Appellant never identified the gray Yukon's owner, never testified that [the driver] had permission to

operate the vehicle, and never testified that the Yukon's unidentified owner gave Appellant permission to occupy the vehicle. Based on the Commonwealth's evidence, this Court denied Appellants suppression motion in its entirety.

PCRA Court Opinion, 2/12/14, at 2-4.

Appellant was charged with three counts each of robbery, theft by unlawful taking, receiving stolen property, simple assault, and recklessly endangering another person, two counts of violating the Uniform Firearms Act, and one count of possessing an instrument of crime. Appellant filed a motion to suppress physical evidence, out-of-court identifications, and his statements to police. The motion was denied, and the case proceeded to a bench trial. At the conclusion of the trial, Appellant was found guilty on all charges. On March 24, 2010, the trial court sentenced Appellant to an aggregate term of ten to twenty years of incarceration, followed by six months of probation. Appellant filed a timely appeal, and his judgment of sentence was affirmed on March 31, 2011. *Commonwealth v. Allen*, 891 EDA 2010, 26 A.3d 1212 (Pa. Super. filed March 31, 2011) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on September 14, 2011. *Commonwealth v. Allen*, 29 A.3d 370 (Pa. 2011).

On January 11, 2012, Appellant, through counsel, filed a timely PCRA petition, and on August 5, 2013, the PCRA court dismissed the petition. This timely appeal followed.

-4-

On appeal, Appellant raises the following issues:

A. Is the appellant entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing as a result of the ineffective assistance of appellate counsel for failing to raise on appeal the issue of the trial court's denial of the appellant's motion to suppress physical evidence?

B. Is the appellant entitled to post-conviction relief in the form of a remand for resentencing or for an evidentiary hearing as a result of the ineffective assistance of trial counsel for failing to file and litigate a post-sentence motion in the nature of a motion for reconsideration of sentence?

Appellant's Brief at 4.

When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the determination of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa. Super. 2003). There is no right to an evidentiary hearing on a PCRA petition, and the PCRA court may decline to hold a hearing if the claims are patently frivolous and without a trace of support in the record. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa. Super. 2001). On review, we examine the issues raised in the petition in light of the record to determine whether the PCRA court erred in concluding that there were no

genuine issues of material fact and in denying relief without an evidentiary hearing. *Id*.

When considering an allegation of ineffective assistance of counsel, we note that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. *Commonwealth v. Pierce*, 527 A.2d 973, 975-976 (Pa. 1987). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different." *Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004) (quoting *Commonwealth v. Rush*, 838 A.2d 651, 656 (Pa. 2003)).

Upon review of the issues raised, the briefs of the parties, the certified record, and the applicable legal authority, we conclude that the PCRA court's thorough and well-crafted opinion filed on February 12, 2014, comprehensively outlines the relevant standards and law, and it correctly disposes of Appellant's issues. Accordingly, we affirm the August 5, 2013

order dismissing Appellant's PCRA petition, and we do so based on the PCRA court's opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      CP-51-CR-0010365-2009

VS.

LAMAR ALLEN      2299 EDA 2013

OPINION

SCHULMAN, S.J., J.

Appellant appeals this Court's Order dismissing his Petition filed under the Post Conviction Relief Act ("PCRA"). This Court submits the following Opinion in accordance with Pa. R.A.P. No. 1925, and for the reasons set forth herein, recommends that its Order be affirmed.

PROCEDURAL BACKGROUND

On June 27, 2009, Appellant was arrested and charged with three (3) counts of Robbery, three (3) counts of Theft by Unlawful Taking, three (3) counts of Receiving Stolen Property, three (3) counts of Simple Assault, three (3) counts of Recklessly Endangering Another Person, one (1) count of violating 18 Pa. C.S. § 6106, one (1) count of violating 18 Pa. C.S. § 6108, and one (1) count of Possessing an Instrument of a Crime.

On February 1st and 2nd, 2010, prior to trial, Appellant brought an omnibus motion to suppress physical evidence, statements to police, and out-of-court identifications. These motions were denied. A bench trial ensued and this Court found Appellant guilty of the above charges. On March 24, 2010, this Court sentenced Appellant to ten (10) to twenty (20) years of incarceration, to be followed by six (6) months of probation.

The Superior Court affirmed this Court's judgment of conviction and sentence on March 31, 2011, and the Pennsylvania Supreme Court denied Appellant allocatur on September 14

2011. On January 11, 2012, Appellant filed a timely PCRA Petition and a Consolidated Memorandum of Law, alleging he is entitled to post-conviction relief because his counsel on direct appeal failed "to raise on appeal the issue of the trial court's denial of [Appellant's] motion to suppress physical evidence," and because his trial counsel failed "to file and litigate a post-sentence motion ... for reconsideration of sentence."

On May 16, 2013, the Commonwealth filed a motion to dismiss Appellant's PCRA Petition, which this Court granted. On August 7, 2013, this Court formally dismissed Appellant's Petition, and Appellant filed a Notice of Appeal that same day. On October 3, 2013, Appellant filed a Statement of Matters Complained of on Appeal.

## FACTUAL HISTORY

The evidence presented at the suppression hearing is summarized as follows. On June 27, 2009, between 2:30 and 3:00 a.m., Officer Davis of the Philadelphia Police Department responded to a call of a robbery near 17th and Pine Streets, in the city and county of Philadelphia, Pennsylvania. Upon arriving on the scene, the officer spoke to the robbery victims ("complainants") – Marisa Guaglione Stevens, Glenn Stevens, and Christopher Guaglione.[1] Based on information supplied by the complainants, Officer Davis submitted a "flash" description of the robbery suspect(s) over police radio. (N.T. 2/1/10, pp. 74-77).

At the time of the robbery, Sergeant Dominick Cole was working bike patrol near 5th and South Streets, in the city and county of Philadelphia, Pennsylvania. While directing traffic, Sergeant Cole observed a gray Yukon vehicle turn the wrong way on 5th Street. The officer signaled the vehicle to pull over so he could issue a traffic summons, and the vehicle's driver complied. (Id., pp. 16-19, 38).

---

[1] Glenn Stevens ("Mr. Stevens") is the husband of Marisa Guaglione Stevens (Mrs. Stevens). Christopher Guaglione is Mrs. Stevens' brother.

2

Sergeant Cole approached the driver's side of the vehicle while another officer (Officer Rivera) approached the passenger side. Appellant was the sole passenger in the vehicle. Sergeant Cole asked the driver for his license, registration and insurance information, but the driver "was unable to produce any vehicle information or a driver's license." The driver gave Sergeant Cole what he asserted to be his name, but when the officer checked this name with the Department of Motor Vehicles (DMV), the DMV reported that no driver's license had been issued under the name. (Id., pp. 20-21).

At this point, Sergeant Cole requested the driver to exit the vehicle and advised that the car would be impounded pursuant to Philadelphia's "Live Stop Program." Because the DMV reported that no license had been issued under the driver's name, Officer Cole "informed him that [the officers] would have to inventory the vehicle, which is part of the Live Stop procedure." (Id., p. 21).

While Sergeant Cole and Officer Rivera escorted the driver to the vehicle's rear, Officer Rivera observed a "hoodie" sweatshirt on the vehicle's rear, driver's side seat, with a wallet "sticking out of it." Officer Rivera retrieved the hoodie, opened the wallet, and saw that it contained the driver's license of a white male who resided near 17th and Pine Streets. Upon inquiring over police radio whether any robberies recently occurred in that area, the officers learned that one had just occurred at 17th and Pine Streets. Sergeant Cole therefore requested that the robbery victims be brought to 5th and South Streets for purposes of identification. (Id. pp. 23-24, 42-43)

By this time, another officer, Officer Corrado, had arrived and was standing outside the Yukon's passenger side door. (Id., p. 67) When she attempted to remove Appellant from the

_____

[1] The driver eventually provided Sergeant Cole another name, and the DMV reported that a driver's license had been issued under this second name. (Id., p. 39).

2

passenger seat, a glove fell from the vehicle and landed on the pavement. Officer Corrado leaned over to retrieve the glove and observed the handle of a gun beneath the passenger seat. Officer Corrado immediately notified Sergeant Cole and Officer Rivera of her discovery, assisted them in securing Appellant in handcuffs, and recovered the weapon. (Id., pp. 68-69).[3] The officers also recovered several items from the floor of the vehicle where they discovered the gun, including several cell phones, a camera, and credit cards. (Id., pp. 27-29). After removing Appellant from the vehicle, Officer Corrado asked whether he was licensed to carry a firearm. Appellant responded "no" and stated that the gun belonged to his brother. (Id., pp. 68-69).

In response to Officer Cole's radio call, Officer Davis transported the complainants to 5th and South Streets for possible identification. Upon seeing Appellant, all of the complainants identified him as the man who robbed them at gunpoint. Without hesitation, they immediately said, "That's him. That's the guy." (Id., pp. 77-81). The complainants also identified the gun used by Appellant in the robberies, and confirmed that the items recovered from the vehicle belonged to them. (Id., pp. 34-35).

After these positive identifications, Officer Rivera searched Appellant and recovered from his left pocket an ID and credit card belonging to Mrs. Stevens. (Id., p. 57).

Appellant provided no testimony or other evidence at the suppression hearing. Appellant never identified the gray Yukon's owner, never testified that his accomplice had permission to operate the vehicle, and never testified that the Yukon's unidentified owner gave Appellant permission to occupy the vehicle. Based on the Commonwealth's evidence, this Court denied Appellant's suppression motion in its entirety.

---

[3] The handgun was a black "Smith & Wesson" loaded with ten (10) live rounds. (Id., p. 23).

4

DISCUSSION

Appellant raises the following issues on appeal:

1. "The [Appellant] is entitled to post-conviction relief in the form of a new trial or an evidentiary hearing as a result of the ineffective assistance of appellate counsel for failing to raise on appeal the issue of the trial court's denial of the defendant's motion to suppress physical evidence. The [Appellant] has standing to challenge the search and confiscation of physical evidence. The defendant adopts the arguments made in the amended post-conviction petition."

2. "The [Appellant] is entitled to post-conviction relief in the form of a new trial or an evidentiary hearing as a result of the ineffective assistance of trial counsel for failing to file and litigate a post-sentence motion in the nature of a motion for reconsideration of sentence. The sentence imposed was clearly unreasonable and excessive. The defendant adopts the arguments made in the amended post-conviction petition."

This Court will address the above issues in order.

1. Whether counsel on direct appeal rendered ineffective assistance by "failing to raise on appeal the issue of the trial court's denial of the defendant's motion to suppress physical evidence."

Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a showing by the petitioner." See Commonwealth v. Smith, 17 A.3d 873, *11 (Pa. 2011). "[A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission." Id. "[C]ounsel can never be found ineffective for failing to assert a meritless claim." See Commonwealth v. Pettus, 424 A.2d 1332, 1335 (Pa. 1981). "The threshold inquiry in ineffective assistance of counsel claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot

5

be considered ineffective for failing to assert a meritless claim." See Commonwealth v. Carter, 597 A.2d 1156 (Pa. Super. 1991)

Appellant alleges that appellate counsel rendered ineffective assistance by failing to appeal this Court's denial of Appellant's motion to suppress the hoodie and wallet recovered from the vehicle's backseat. Appellant failed at the suppression hearing to demonstrate an expectation of privacy in any item deposited on the vehicle's backseat -- or anywhere else in the vehicle -- and his prior appellate counsel cannot be deemed ineffective for declining to present an issue that is entirely meritless.

"To prevail on a motion to suppress, the defendant must show that he or she has a privacy interest which has been infringed upon." See Commonwealth v. Arthur, 62 A.3d 424, 428 (Pa. Super. 2013). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." Id. (citing Commonwealth v. Burton, 973 A.2d 428, 434 (Pa. Super. 2009)). "A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized." See Commonwealth v. Powell, 994 A.2d 1096, 1103-1104 (Pa. Super. 2010). "Whether a defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion." Id. (citations omitted here). Id. "The determination whether a defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant." Id.

"[A] defendant charged with a possessory offense has automatic standing to challenge a search." See Powell, 973 A.2d 428, 435 (Pa. Super. 2009) (citing Burton, supra). "However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched." Id. "An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation

6

is one that society is prepared to recognize as reasonable." Id. "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." Id. "[A] defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct *violated his own, personal privacy interests*." Id. (emphasis in original) (*citing* Commonwealth v. Millner, 585 Pa. 237, 257 (Pa. 2005)); *see also* Commonwealth v. Maldonado, 14 A.3d 907 (Pa. Super. 2011); Commonwealth v. Cruz, 21 A.3d 1247 (Pa. Super. 2011).

The Superior Court's decision in *Powell* is instructive. In *Powell*, the defendant was a front-seat passenger in a vehicle pulled over for a traffic violation. *See* Powell, 994 A.2d 1096, 1098-1099 (Pa. Super. 2010). The driver (co-defendant) produced his driver's license and a registration for the vehicle, which indicated that the vehicle was registered to neither occupant. According to the driver, the vehicle belonged to his wife. Id. A police officer searched the vehicle on the purported basis of the driver's consent, and seized contraband from the vehicle's trunk. Id.

The trial court granted the defendants' motion to suppress the contraband. On appeal, the Superior Court affirmed the trial court's order suppressing physical evidence against the vehicle's driver, finding that the driver never consented to the vehicle search. Id. at 1101-1103. However, the Superior Court reversed the order as it related to the defendant passenger, finding that the passenger failed to show a reasonable expectation of privacy in the vehicle. Id. 1107-1108. The passenger "submitted no evidence at the suppression hearing to demonstrate that he had any privacy interest in the trunk of the vehicle in which he was a passenger." Id. Rather, the vehicle "was registered to a third person," someone else was operating it, and the passenger "had no

connection to the vehicle whatsoever." Id. The Court stressed that a defendant "cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct *violated his own, personal privacy interests.*" Id. (citing Millner, *supra*).[5] "[B]ecause [the defendant] did not establish that his personal privacy rights were violated, he cannot prevail in his attempt to suppress the contraband found by the police in this case." Id.

The Superior Court has held similarly in circumstances comparable to both *Powell* and the instant case. In *Burton*, the defendant was the driver and sole occupant of a vehicle that police officers pulled over for a motor vehicle violation. See Burton, 973 A.2d 428, 434. The defendant provided personal identification but he could not produce a driver's license, insurance

---

[5] The Supreme Court's decision in *Millner* is instructive as well. In *Millner*, police officers arrived in an unmarked vehicle at a location where gunshots had been fired. See Millner, 585 Pa. 237, 242. According to the officers, they arrived on the scene and observed the defendant "placing a large hand gun into the back of [a] Cadillac ... through the rear driver's side window." Id. The officers exited their vehicle, pulled out their badges, approached the defendant and his companion, and identified themselves as police officers. Id. When the officers identified themselves, the defendant's accomplice threw a clear plastic bag to the ground. Id. The officers consequently "conducted a safety pat down" and recovered cocaine from both the defendant and his accomplice. Id. After the two men were handcuffed, one of the officers retrieved the handgun from the Cadillac's backseat. Id. at 243.

The defendant was charged with possession of drugs and a firearm. He filed a motion to suppress physical evidence arguing that the police required a warrant to search the Cadillac for the firearm. The trial court granted the suppression motion and the Superior Court affirmed. Id. at 244-246. The Commonwealth appealed to the Supreme Court, which reversed the suppression order. The Supreme Court noted, "[a]lthough the facts were sharply disputed at the suppression hearing concerning the stop and search of [the defendant's] person, the relevant facts were undisputed concerning central aspects of the police seizure of the firearm, *i.e.*, it was undisputed that the firearm was seized from the Cadillac, not from [the defendant's] person, and no evidence was forwarded to suggest that [the defendant] had a reasonable expectation of privacy in the Cadillac." Id. at 247. The defendant "offered no evidence to demonstrate a personal privacy interest in the vehicle, the search of which formed the basis for his claim that the firearm should be excluded." Id at 257. The defendant "produced no evidence that he owned the vehicle, nor did he produce evidence which remotely suggested that he had any other connection to the vehicle which could form the basis for so much as a subjective expectation of privacy." Id. Thus, the Court held that the defendant "failed to establish a subjective expectation of privacy in this particular vehicle, much less one that society would accept as reasonable, such that the warrantless police entry implicated his own personal privacy interests." Id. at 258.

information or the vehicle's registration. Id. A computer check revealed that the defendant had an active arrest warrant and was neither a licensed driver nor the vehicle's owner. Id. The officers arrested the defendant on his outstanding warrant and called the parking authority so that the vehicle could be towed. Id. While conducting an inventory search, one of the officers observed and "checked" a jacket located in the vehicle's trunk. Id. Inside the sleeve of the jacket was a baseball cap, in which officers discovered a brown paper bag filled with 174 smaller bags of cocaine. Id.

The defendant brought a motion to suppress the cocaine. Id. at 434-435. The trial court denied the motion and the Superior Court affirmed, holding that the defendant failed to demonstrate a privacy interest in the vehicle. Id. The defendant did not own the vehicle and "offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle." Id. Thus, the defendant "failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate." Id. (emphasis supplied)

In Maldonado, the defendant was pulled over for a motor vehicle violation and he could not produce a valid driver's license or proof of insurance for the vehicle, which was not registered to him. See Maldonado, 14 A.3d 907, 909. Because the defendant had "three outstanding scofflaw warrants," the officer "placed [him] into his squad car while he decided whether to arrest [him] or give him a subpoena for a court date." Id. While waiting for a tow truck to impound the vehicle, the officer conducted an inventory search and discovered narcotics and a firearm. Id. The defendant filed a motion to suppress both the drugs and the firearm, which the trial court granted. Id. at 910. The Superior Court reversed on appeal, holding that the defendant "failed to establish an expectation of privacy in the vehicle he was driving, which 'he

did not own, that was not registered to him, and for which he has not shown authority to operate." Id. at 911-912 (quoting Burton, supra).

In Cruz, police officers received a radio dispatch to be on the lookout for an armed male operating "an older model green, small vehicle." See Cruz, 21 A.3d 1247, 1248-1249. The police pulled the defendant over because he was driving a vehicle matching the radio description. Id. The vehicle had no license plate and the defendant could not produce its registration or any proof of insurance. Id. The defendant also gave several false names and dates of birth, but the police eventually determined his identity and discovered that he had an outstanding warrant. Id. The police impounded the vehicle, and while conducting an inventory search, one of the officers discovered a firearm. Id.

The defendant brought a motion to suppress the firearm, which the trial court denied. The Superior Court affirmed the trial court's order, holding that the defendant "cannot successfully challenge the search of the vehicle because he has failed to demonstrate any privacy interest in the vehicle." Id. at 1251-1252. The defendant "presented no evidence that he owned the vehicle, that it was registered in his name, or that he was using it with the permission of the registered owner." Id. Thus, the defendant "had no cognizable expectation of privacy and [could] not challenge the search." Id.

In this case, Appellant failed to show any expectation of privacy in the backseat of the vehicle which he did not own, which he was not operating, which was not registered to him, and for which he had not shown any authorization to occupy. See Powell, Millner, Burton, Maldonado, Cruz, supra. Appellant presented no evidence of who owned the vehicle, no evidence that his accomplice was authorized to operate the vehicle, no evidence that Appellant even knew the vehicle's owner, and no evidence that the unidentified owner granted Appellant

permission to occupy the vehicle. Thus, Appellant failed to establish an expectation of privacy in any item deposited in the vehicle -- particularly any item left on the *rear, driver's side passenger seat* -- and his motion to suppress was meritless. Because his prior counsel cannot be deemed ineffective for failing to raise a meritless argument, Appellant's PCRA Petition was properly dismissed.

Appellant also fails to satisfy the "**prejudice**" prong of his ineffectiveness claim. Regarding prejudice, "it must be demonstrated that but for the act or omission in question, the outcome of the proceedings would have been different." See Commonwealth v. Hammond, 953 A.2d 544, 559 (Pa. Super. 2008) (citations omitted). In this case, even if Appellant had a reasonable expectation of privacy in the hoodie and wallet seized from the vehicle's backseat, Appellant cannot establish prejudice by counsel's failure to raise the suppression issue on direct appeal. The wallet was one of *several* stolen items that the officers seized from the vehicle or Appellant's person, and these several *other* items, which were legitimately seized, amply established Appellant's guilt.

"[A]nytime a police officer has 'reasonable suspicion' to believe a violation of the Motor Vehicle Code is occurring or has occurred, the officer may initiate an investigatory vehicle stop." See Commonwealth v. Mack, 953 A.2d 587, 589 (Pa. Super. 2008). "Incident to this stop, an officer may check the vehicle's registration, the driver's license and obtain any information necessary to enforce provisions of the motor vehicle code." Id. "Additionally, police may request both drivers and their passengers to alight from a lawfully stopped car as a matter of right." Id. "Allowing police officers to control all movement in a traffic encounter is a reasonable and justified step towards protecting their safety." Id.

11

Sergeant Cole pulled over the vehicle for a traffic violation. While removing Appellant from the vehicle pursuant to a valid traffic stop, Officer Corrado observed a gun beneath his seat. The officers then secured Appellant in handcuffs and Officer Corrado asked whether he possessed a license to carry the firearm. Appellant replied "no" and stated that the gun belonged to his brother. (N.T., 2/1/10, p. 69) Appellant therefore was arrested for possessing a firearm without a license. See 18 Pa. C.S. §§ 6106 and 6108.

"Incident to a lawful arrest, police officers may conduct a warrantless search of the person arrested and the area within that person's immediate control in order to remove any weapons that might be used to facilitate escape or resist arrest, and to prevent destruction of evidence." Commonwealth v. Bess, 382 A.2d 1212, 1214 (1978); Commonwealth v. Walker, 501 A.2d 1143, 1148 (Pa. Super. 1985) ("The warrantless search acts to protect the arresting officer from weapons the arrestee may have access to, and prevents the destruction or concealment of evidence"). After recovering the firearm and securing Appellant in handcuffs, the officers could search Appellant incident to his arrest. See Bess, Walker, supra. Although Appellant was not completely searched until after the complainants identified him as the individual who robbed them, Officer Corrado ultimately recovered Mrs. Stevens' Identification and credit card from Appellant's pocket. These items of evidence -- which directly linked Appellant to the robberies -- were recovered during a search incident to Appellant's lawful arrest, and not during a vehicle search.

The officers also recovered several of the complainants' belongings on the floor beneath the vehicle's front passenger seat, including the complainants' credit cards, cell phones, and a camera. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger

12

compartment of that automobile." See Commonwealth v. Henry, 517 A.2d 559, 561-562 (Pa. Super 1986) (citations omitted here); Commonwealth v. Mickell, 598 A.2d 1003, 1009 (Pa. Super 1991). Thus, the officers properly recovered these robbery proceeds as well, all of which linked Appellant to the crimes for which he was convicted.

Accordingly, even if Appellant had a reasonable expectation of privacy in the hoodie and wallet left on the vehicle's rear, driver's side seat (which he did not), he suffered no prejudice by his counsel's purported failure to challenge on appeal this Court's refusal to suppress such evidence. In addition to the wallet, the police lawfully recovered a number of the complainants' belongings on Appellant's person and in the vicinity of the gun. All of these additional items of evidence inculpated Appellant in the robberies. Thus, appellate counsel's purported error could not have prejudiced the outcome of Appellant's appeal, as there was a wealth of untainted evidence, besides the wallet, establishing Appellant's guilt.

2.     Whether trial counsel rendered ineffective assistance by "failing to file and litigate a post-sentence motion in the nature of a motion for reconsideration of sentence."

Appellant claims that his trial counsel rendered ineffective assistance by failing to file post-sentence motions arguing that his sentence was "unreasonable and excessive." Appellant's claim is frivolous.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." See Commonwealth v. Shugars, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citations omitted here). "[A]n abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a

manifestly unreasonable decision." Id. "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa. C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant...." Id. "Furthermore, a trial court has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." Id.

"When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it is not bound by the Sentencing Guidelines." See Commonwealth v. Sheller, 961 A.2d 187, 190 (Pa. Super. 2008). "It is well established that the Sentencing Guidelines are purely advisory in nature." Id. (quoting Commonwealth v. Yuhasz, 923 A.2d 1111, 1118 (Pa. 2007)); Commonwealth v. Walls, 926 A.2d 957, 965 (Pa. 2007) ("[T]he guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors -- they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence"). "The court may deviate from the recommended guidelines; they are merely one factor among many that the court must consider in imposing a sentence." See Sheller, 961 A.2d 187, 190. "A court may depart from the guidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." Id. (citations omitted here). "When a court chooses to depart from the guidelines however, it must demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines." Id. "Further, the court must

14

provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." Id.

"When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable." See Sheller, 961 A.2d 187, 190. "An appellate court must vacate and remand a case where it finds that the sentencing court sentenced outside the sentencing guidelines and the sentence was unreasonable." Id. (citations omitted here). "In making a reasonableness determination, a court should consider four factors: (1) The nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) The findings upon which the sentence was based[; and] (4) The guidelines promulgated by the commission." Id.

Appellant was convicted of three (3) counts of Robbery, three (3) counts of Theft by Unlawful Taking, three (3) counts of Receiving Stolen Property, three (3) counts of Simple Assault, three (3) counts of Recklessly Endangering Another Person, one (1) count of violating 18 Pa. C.S. § 6106, one (1) count of violating 18 Pa. C.S. § 6108, and one (1) count of Possessing an Instrument of a Crime. (N.T., 3/24/10, pp. 22-25.)

At the time of sentencing, Appellant's prior record score was a "5" and his offense gravity score was a "10." *Each* of Appellant's robbery convictions carried a maximum sentence of 20 years' incarceration. The sentencing guideline range for *each* robbery conviction was 78-90 months' incarceration, plus or minus 12 months. (N.T., 3/24/10, pp. 2-5.) Appellant was entitled to no "volume discount" for his multiple crimes, and he could have been sentenced to *consecutive* terms of incarceration for *each* individual robbery. See Commonwealth v. Anderson, 538 Pa. 574, 579-580 (1994).

13

This Court sentenced Appellant to a total of 10-20 years incarceration for his three robbery convictions. Rather than sentencing Appellant to consecutive terms, this Court showed leniency by allowing Appellant to serve his terms of incarceration concurrently. As noted in the Commonwealth's motion to dismiss, "[h]ad the Court imposed only the bottom standard range of the guidelines as its minimum sentence—but ordered the three robbery sentences to run consecutively to each other, as was within its discretion—defendant would now be facing a minimum term of incarceration of nineteen and one-half years, instead of ten years." (See Commonwealth's motion to dismiss).

Besides three (3) counts of robbery, Appellant was convicted of several other crimes that carried substantial terms of incarceration as sentencing alternatives. With respect to these crimes -- i.e., carrying a firearm without a license, simple assault, recklessly endangering another person, and possessing an instrument of a crime -- this Court again showed leniency by sentencing Appellant to only probation or imposing no sentence at all. (N.T., 3/24/10, pp. 22-23). For instance, although Appellant's conviction under 18 Pa. C.S. § 6108 carried a guideline range of 48 to 60 months' incarceration, plus or minus 12 months, this Court imposed no penalty on that charge. (Id.). This Court also imposed no penalty on Appellant's conviction of Possessing an Instrument of a Crime. (Id.).

Furthermore, the record reflects that this Court took full account of Appellant's despicable conduct, along with his already deplorable criminal history (which included 11 arrests and 9 convictions).[5] This Court ordered and reviewed a presentence report, mental health

_____

[5] It bears recalling that Appellant came from Delaware to Philadelphia *solely* to rob people at gunpoint -- for no other purpose. That Appellant was able to rob and terrorize only three (3) victims was due to the providential fact that he observed too many police officers in areas where he sought additional prey. (N.T., 2/1/10, pp. 99-102). His conscience, or lack thereof, was no impediment. Moreover, Appellant's conduct was exacerbated by the fact that he executed his

16

evaluation, heard the testimony of Appellant's pastor, and took into account all relevant considerations -- including the fact that Appellant terrorized his victims and placed them in "fear of death." In light of his crimes, Appellant's sentence was lenient rather than excessive, and Appellant's repugnant criminal record belies any notion that his conduct in this case was an aberration. (N.T., 3-24-10, pp. 21-22)

Considering the relative lenity of his sentence, Appellant's claim that trial counsel was ineffective for failing to argue that his sentence was "excessive" is frivolous, and Appellant's PCRA Petition was properly dismissed.

CONCLUSION

For the reasons set forth in the foregoing Opinion, the Court's Order dismissing Appellant's PCRA Petition should be affirmed.

BY THE COURT:

DATE 2/11/14

SUSAN I. SCHULMAN, J.

---

crimes by pointing a loaded gun at his victims, thus deliberately creating a situation that was fraught with physical danger