J-S09016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL THOMAS BAIR, III, | |
| Appellant | No. 932 WDA 2014 |

Appeal from the PCRA Order May 20, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0003351-2011, CP-65-CR-0003353-2011

BEFORE:  FORD ELLIOTT, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 13, 2015**

Paul Thomas Bair, III, appeals *pro se* from the order entered May 21, 2014, denying his PCRA petition, after the PCRA court permitted counsel to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) ("**Turner/Finley**").  Finding no error, we affirm.

A jury found Appellant guilty of criminal trespass and simple assault on April 12, 2012.[1]   The trespass occurred on November 19, 2010, in Indiana

_____

[1] Appellant was charged with a host of other offenses at three separate case numbers.  The court dismissed several charges prior to the jury deliberating and the jury acquitted him of the remaining charges, except the trespass and simple assault.  The criminal trespass charge was at case number 3353-2011 and the simple assault at case number 3351-2011.

County.[2]  Tracy Singer and her then-teenage son had arrived home after dropping off her son's girlfriend.  The two began to argue and Ms. Singer's son told his mother that Appellant was sleeping in a back bedroom. Appellant and Ms. Singer had been friends for over a decade.  However, Ms. Singer said to her son that she did not want Appellant there.  Upon hearing this, Appellant became angry, stormed out of the room and hit Ms. Singer. After being told to leave by Ms. Singer, Appellant exited the residence, and then reentered the home and assaulted her again. Appellant left the home on three or four occasions, but continued to return to strike the victim.  The second time he left, he violently kicked her dog.

Ms. Singer indicated that she demanded that Appellant leave three or four times and her son also asked Appellant to leave.  At one point Ms. Singer attempted to call the police and Appellant broke her cellphone.  Ms. Singer's son ultimately contacted the police.  Pennsylvania State Trooper Stephen Siko and his partner arrived on the scene after receiving a call of an assault.  Ms. Singer did not want to pursue charges, and Trooper Siko issued a citation for a summary harassment offense.  That citation, however, did allege that Appellant hit the victim with a closed fist, and pushed and struck

---

[2]  Appellant challenged the trial court's venue on direct appeal.  We found this issue waived because Appellant did not contest venue prior to his preliminary hearing.  Appellant has not developed an argument on appeal that PCRA counsel was ineffective in failing to raise trial counsel's ineffectiveness for not timely asserting the venue issue, though he does contest venue.  We address his position in the body of this memorandum.

the victim, causing an abrasion above her left eye.  Subsequently, a bench warrant was issued for Appellant arising out of the harassment.  However, State Trooper James McKenzie, in the course of investigating later incidents involving Appellant and Ms. Singer, asked that the harassment charge be withdrawn in order to file burglary, criminal trespass, aggravated assault, and simple assault charges.  Trooper Siko obliged, and Trooper McKenzie filed a criminal complaint in Westmoreland County against Appellant alleging the more serious charges.  Trooper McKenzie elected to pursue the charges in Westmoreland County after discussing the matter with the Indiana County district attorney and based on his belief that the November 19, 2010 incident initiated a single criminal episode that continued in Westmoreland County.

One of the later incidents occurred two or three weeks after the aforementioned events at a bar called the Stumble Inn in Westmoreland County.  The bar was operated by Appellant's parents.  Although Appellant was acquitted of the criminal charges arising from this occasion, it is necessary to understand the context of why charges were brought and consolidated in Westmoreland County.  Appellant allegedly approached Ms. Singer and told her that she was not allowed to be in the bar.  According to Ms. Singer, he then grew angry, began to yell, and threw a beer bottle.  Ms. Singer related that Appellant was upset because her son had talked to the police about the November 19, 2010 events, and that Appellant had been

charged with a crime. Appellant supposedly threatened to kill Ms. Singer and her son. Ms. Singer did not call police at this time, but reported the matter after the following incident occurred.

On May 1, 2011, Appellant struck Ms. Singer with his fist at the home of a mutual friend in Westmoreland County, knocking her unconscious. These facts gave rise to the simple assault conviction at issue herein. Ms. Singer and several other friends, including Appellant, were at the home of Clark Baird. Mr. Baird's home is located directly behind the Stumble Inn. The group was consuming alcohol at a bar in Mr. Baird's residence. Among the individuals at the house was Derrick Quick, Ms. Singer's boyfriend.

Mr. Quick and Appellant tussled on two occasions within approximately a five minute period. Appellant maintained that the fight was because Mr. Quick had slept with Appellant's nineteen year old daughter and that Ms. Singer called his daughter a slut. Appellant left the bar area after the scuffles. However, he returned and struck Ms. Singer in the face. At trial, Appellant admitted hitting Ms. Singer on this occasion, but he contested the severity of the injury and that he used his fist. Ms. Singer went to the hospital the next day for treatment. The jury saw a photograph of her injury and heard testimony from the treating physician. In addition, the jury heard a voicemail left by Appellant apologizing to the victim for the assault.

Ms. Singer maintained at trial that she went to the hospital because she had difficulty seeing from the eye and asserted that she had been cut.

The medical report did not reflect a cut or that Ms. Singer complained of vision trouble. Accordingly, Appellant has insisted since the preliminary hearing in this matter that Ms. Singer committed perjury. Nonetheless, because Appellant admitted to hitting Ms. Singer, and every other eyewitness confirmed this, there was overwhelming evidence of his guilt of simple assault.

Following the jury verdict, the court sentenced Appellant, on July 2, 2012, to one and one-half to seven years incarceration for the criminal trespass charge and imposed a concurrent one to two year period of imprisonment for the simple assault conviction. Appellant timely appealed. Prior to this Court resolving Appellant's direct appeal, Appellant prematurely filed a PCRA petition on April 29, 2013. This Court affirmed Appellant's judgment of sentence on December 6, 2013, **Commonwealth v. Bair**, 93 A.3d 503 (Pa.Super. 2013), and Appellant did not petition for allowance of appeal. Despite Appellant's direct appeal having been decided, rendering his initial PCRA petition ripe for review, the PCRA court dismissed that petition on January 10, 2014, as premature and without appointing counsel.

Appellant filed the underlying PCRA petition on January 21, 2014. The PCRA court properly construed that petition as a first-time petition and appointed counsel. The court further directed counsel to file either an amended petition or a **Turner/Finley** no-merit letter. Counsel filed a no-

merit letter on March 24, 2014, although Appellant apparently did not receive a copy of that document until one month later.

The PCRA court filed a Pa.R.Crim.P. 907 notice of intent to dismiss on April 28, 2014. Appellant filed a *pro se* response. The PCRA court issued a final order on May 21, 2014, denying Appellant's petition and permitting counsel to withdraw. This timely appeal ensued. The PCRA court did not direct Appellant to file or serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, a different judge from the one who handled the PCRA matter entered an order indicating that the reasons for the dismissal could be found in the PCRA court's Rule 907 notice. The matter is now ready for our review. Appellant presents two questions for this Court's consideration.

> 1. Did the PCRA Court commit [an] abuse of discretion, and/or error law, in its assessment of the Defendant's issues that was [sic] reached after its independent review of the PCRA Motion?
>
> 2. Was Counsel ineffective in its [sic] representation by submitting a letter of no merit to the Court after his assessment of the issues raised by the Defendant in his PCRA?

Appellant's brief at 4.

In conducting review of a PCRA matter, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). Our review is limited to the evidence of record and the factual findings of the

- 6 -

PCRA court. *Id*. This Court will afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Id.* Thus, when a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. *Id*. Of course, if the issue pertains to a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Id.*

Although Appellant's statement of issues presented includes only two claims, he raises numerous arguments under each separate issue. Appellant begins by contending that the PCRA court did not conduct an independent review of the record because it did not consider a March 19, 2012 *pro se* filing. At the time of this filing, counsel represented Appellant. Thus, any such *pro se* filing during this period was a legal nullity. ***Commonwealth v. Figueroa***, 29 A.3d 1177, 1179 n.2 (Pa.Super. 2011); ***see also Commonwealth v. Ali***, 10 A.3d 282, 293 (Pa. 2010). In addition, there is no copy of the March 19, 2012 filing in the certified record; therefore, the PCRA court could not review it. Nor was such a copy in the record during Appellant's direct appeal, as this Court entered an order indicating as such. This explains why no copy has been provided to Appellant by the trial court despite his attempts to procure a copy of the document.

We add that the record contains a letter from Appellant indicating that the March 19, 2012 correspondence was a complaint he filed with the Pennsylvania Disciplinary Board. Thus, its relevance to Appellant's

- 7 -

convictions is immaterial. The clerk of courts' apparent failure to abide by Pa.R.Crim.P. 576[3] does not work any prejudice to Appellant, since any disciplinary complaint regarding counsel was a collateral matter and Appellant has been afforded full review of counsel's effectiveness at trial. Appellant's position as to the March 19, 2012 *pro se* document is entirely devoid of merit.

Next, Appellant avers that the PCRA court did not address the correct PCRA petition. According to Appellant, the PCRA court examined his earlier April 29, 2013 petition rather than his January 21, 2014 petition. This position stems from the PCRA court's notice of intent to dismiss, which references the earlier petition but does not expressly acknowledge the January 2014 filing. Appellant's claim fails because the context of both the PCRA court's Rule 907 notice and PCRA counsel's no-merit letter readily demonstrate that the court and counsel addressed the issues raised in Appellant's later petition.

_____

[3] Pa.R.Crim.P. 576(4) reads,

> In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt.

Specifically, PCRA counsel in his no-merit letter examined Appellant's allegations that the prosecution used false testimony, failed to authenticate evidence, used unsubstantiated allegations, violated Pa.R.Crim.P. 576, and that the trial court improperly questioned a witness, that trial counsel was ineffective, and the trial court lacked jurisdiction. These are the issues Appellant leveled in his January 21, 2014 petition. The PCRA court examined these claims in its Rule 907 notice.

Furthermore, Appellant's reliance on **Commonwealth v. Tedford**, 781 A.2d 1167 (Pa. 2001), is misplaced. In **Tedford**, our Supreme Court held that where the court dismissed the petitioner's first-time PCRA petition without appointing counsel, the subsequent petition was to be treated as a timely first petition. Here, Appellant was appointed counsel after the 2014 filing, and the court never considered that petition to be untimely. **Tedford**, therefore, does not afford relief. As Appellant's argument is based on an erroneous factual predicate, *i.e.*, that the court did not consider the claims leveled in his later petition, he is entitled to no relief.[4]

Appellant continues, maintaining that the Commonwealth knowingly presented false statements and did not correct false testimony. In this regard, Appellant is challenging the testimony of the victim. He posits that

_____

[4] We note that Appellant's allegations in both petitions are substantially the same, although he filed witness certifications with his later petition and a lengthy brief in support of his earlier petition.

Ms. Singer lied when she testified that she could not see out of the eye that Appellant struck and that he cut her eye. Appellant's claim fails for myriad reasons.

First, claims of trial court error cannot be raised for the first time during PCRA review. 42 Pa.C.S. § 9544(b); 42 Pa.C.S. § 9543(a)(3). Rather, issues of trial error must be preserved at trial and raised on direct appeal or they are waived. 42 Pa.C.S. § 9544(b); *Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999). Of course, a defendant may overcome waiver by alleging ineffective assistance of counsel.

"To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. *Id*.

Arguable merit exists when the factual statements are accurate and "could establish cause for relief." *Id*. at 707. Whether the "facts rise to the level of arguable merit is a legal determination." *Id*. In considering whether counsel acted reasonably, we look to "whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." *Id*. "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do

not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Id*. (citations omitted). Lastly, prejudice exists where "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. This probability is sufficient when it "undermines confidence in the outcome of the proceeding." *Id*.

Appellant has not adequately developed any argument that counsel was ineffective in failing to raise this contention at trial. Moreover, trial counsel could not be ineffective on this ground because Appellant cannot establish actual prejudice in light of his admission to striking the victim. The act of striking a person in the head is simple assault. *See Commonwealth v. Adams*, 482 A.2d 583 (Pa.Super. 1984). Assuming *arguendo* that the victim lied about the extent of her injuries, proof of simple assault still existed. It is irrelevant whether the victim could or could not see from her eye when she went to the hospital. Further, the emergency room physician's testimony, though not indicating that the victim complained of vision loss, supports Appellant's assault conviction since she complained of an injury to her face, which was caused by Appellant.

For similar reasons, Appellant's claim that the victim's testimony about her eye went to the foundation of the simple assault crime fails. Whether the victim lost vision in her eye or suffered a cut does not exculpate Appellant for his assault. Appellant's bald assertions that the

Commonwealth knew that the victim was lying and suborned perjury does not give rise to a valid claim of suborning perjury. Appellant filed a private criminal complaint against the victim contending that she committed perjury. This complaint was rejected, and this Court affirmed that decision. ***Commonwealth v. Bair***, 93 A.3d 498 (Pa.Super. 2013). Appellant's attempts to recast attacks on the credibility of the witness under the guise of prosecutorial misconduct are entirely unpersuasive. That he would complain that the witness against him was being untruthful prior to his trial is unsurprising, but it is not proof that the witness lied or that the Commonwealth knowingly elicited false testimony.

Ms. Singer testified consistently at the preliminary hearing and trial. The Commonwealth also introduced a picture taken of the victim showing the injury. Appellant's self-serving claim that Ms. Singer was not truthful at either proceeding does not prove the Commonwealth intentionally prompted false statements or had a duty to correct the purported false testimony. As Appellant was acquitted of aggravated assault, the jury likely disbelieved the severity of the injury.

Appellant's reliance on ***Napue v. Illinois***, 360 U.S. 264 (1959), is also unconvincing. In ***Napue***, a witness testified that he had not been promised anything in return for his testimony. However, the very attorney prosecuting the case had made promises to the witness. Thus, the

prosecutor clearly and unequivocally knew that the testimony was untruthful. This case does not involve remotely similar circumstances.

To the extent Appellant now posits that his father and daughter could have testified that the victim lied about whether he lived at the home where the trespass occurred, that position fails too. Any ineffectiveness claim is waived since Appellant did not develop such a position in this appeal nor did he raise such a claim in his *pro se* petition.[5] ***Commonwealth v. Steele***, 961 A.2d 786, 807 (Pa. 2008); ***Wallace***, ***supra***. In addition, with respect to Appellant's daughter, such an ineffectiveness issue would be meritless since he states that she was unavailable. ***Commonwealth v. Clark***, 961 A.2d 80, 90 (Pa. 2008) (witness must have been available for counsel to be ineffective for failing to present that person).

Insofar as Appellant asserts that he "unknowingly always had, at least one witness" to show that Ms. Singer was lying, the position is absurd *ab initio* since that witness was his father. Appellant's brief at 19. He obviously knew of his father. Further, Appellant is simply mistaken in his assertion that, because his father was sequestered, he was ineligible to testify. The

_____

[5] Appellant did attach to his January petition affidavits from his father and a daughter in which they claimed that Appellant lived with the victim at the time of the trespass. PCRA counsel addressed the issue by pointing out that Appellant testified that he stayed at the home and kept a duffel bag of clothes there, but not that he lived at the residence permanently. Ms. Singer testified that Appellant did stay at her house frequently, but that he did not live at the home.

very purpose of sequestration is so that witnesses who are going to testify cannot base their own testimony on the testimony of others. Appellant's argument strains credulity.

Appellant also submits that the Commonwealth used improperly authenticated evidence. Such a claim of trial error is waived. *Wallace*, *supra*. Appellant, however, averred in his reply brief that he intended to raise this position under the guise of ineffective assistance of counsel. Tellingly, Appellant completely neglects to develop any argument under the ineffective assistance of counsel test, but instead tries to incorporate by reference his ineffectiveness discussion on his second issue. *See* Appellant's brief at 25. For this reason alone, Appellant's claim fails. *Steele*, *supra* (failure to develop ineffectiveness test results in waiver); *Commonwealth v. Briggs*, 12 A.3d 291, 342-343 (Pa. 2011) (incorporation by reference is improper); *see also Commonwealth v. Dodge*, 77 A.3d 1263, 1275 (Pa.Super. 2013) (disapproving of Commonwealth's attempt to incorporate arguments).

Moreover, the argument is untenable based on the record. Appellant's claim is that a voice mail on Ms. Singer's cell phone was not properly authenticated.[6] Ms. Singer testified that it was Appellant's voice on the call.

_____

[6] Before the PCRA court, Appellant also forwarded an authentication challenge to a 911 tape from the November 19, 2010 events. He has not
*(Footnote Continued Next Page)*

- 14 -

Nevertheless, Appellant maintains that because Pennsylvania State Police made a copy of this recording, but Ms. Singer did not have knowledge of the copying process, she could not authenticate the voicemail. Appellant cites Pa.R.E. 901 and a non-binding 1975 Third Circuit Court of Appeals decision, **United States v. Starks**, 515 F.2d 112 (3rd Cir. 1975), in support. Appellant misreads the applicable rule, which was passed after **Starks** and, unlike that decision, is controlling.

Appellant conjoins two discrete authentication issues: first, whether the voice on the recording was his and, second, whether the copy was an accurate representation of the voicemail. In either event, Ms. Singer could authenticate both his voice and the accuracy of the copy. Rule 901 provided at the time of Appellant's trial that authentication is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." **See** former Pa.R.E. 901.[7] Evidence that satisfies the requirement of voice identification includes "Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Former Pa.R.E.

_(Footnote Continued)_ ─────────────────

addressed that issue in his principal brief. We note that, based on the record, the claim is frivolous.

[7] The current rule is substantively identical. That rule took effect on March 18, 2013.

901(b)(5). Whether the voicemail was a police copy was irrelevant to authenticating whether the voice was Appellant's.[8]

Additionally, as to the accuracy of the tape, Ms. Singer could testify as to whether the copy was an accurate representation of the actual voice mail, since she had knowledge of the original's contents. When asked if the recording was the phone call that she received, Ms. Singer answered "Yeah." N.T., 4/10/12, at 115. Trial counsel could not be ineffective in failing to make a frivolous objection.[9] Since Ms. Singer could and did authenticate the recording as being an accurate rendition of her voicemail, any objection would not have resulted in the inadmissibility of the evidence.

Having disposed of Appellant's arguments under his first issue, we now consider the positions he forwards in relation to his second claim. Appellant inartfully levels a layered claim of ineffectiveness, but does not fully develop each layer of various counsel's ineffectiveness. Such failure can preclude relief. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011). "Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each

_____

[8] Appellant recognized this in his *pro se* brief in support of his April 2013 petition, but has not as carefully differentiated these authentication claims on appeal. We address both out of an abundance of caution.

[9] Trial counsel actually stipulated that "the message we are going to have played shortly is of a recording of a telephone message left on Ms. Singer's phone after the May 1st incident[.]" N.T., 4/10/12, at 114.

separate attorney." ***Commonwealth v. Rykard***, 55 A.3d 1177, 1190 (Pa.Super. 2012); ***see also Commonwealth v. Reyes***, 870 A.2d 888 (Pa. 2005); ***Commonwealth v. McGill***, 832 A.2d 1014 (Pa. 2003)

Appellant baldly contends that PCRA counsel was ineffective in filing a no-merit letter instead of arguing the merits of trial counsel's ineffectiveness in a number of areas. As Appellant preserved his PCRA counsel ineffectiveness claim in his response to the PCRA court's notice of dismissal, the issue is not waived on that ground. ***Commonwealth v. Pitts***, 981 A.2d 875 (Pa. 2009); ***Rykard***, ***supra***. Nonetheless, since his underlying trial counsel ineffectiveness claims are without merit or were not raised, PCRA counsel cannot be found ineffective.

Appellant submits that trial counsel was ineffective in failing to object to purported ***Brady v. Maryland***, 373 U.S. 83 (1963) violations. ***Brady*** requires the government to disclose material exculpatory evidence and material impeachment evidence to the defense. Appellant claims that the Commonwealth did not disclose a police report from Trooper Siko. Trooper Siko responded to a 911 call relative to the November 19, 2010 incident. Appellant asserts that the prosecution told defense counsel that Trooper Siko did not create a report, but that the trooper testified regarding a report at trial.

The Commonwealth responds that there was no written report by the trooper and that Appellant misreads the trial testimony. The Commonwealth

is correct. Trooper Siko did not testify as to creating a written police report. Rather, he testified that the only written record of the incident was the citation he filed and any notes that he had of the incident he disposed of after filing the citation. The testimony was as follows.

> Trial Counsel: Okay. And also when you and I spoke you shared with me that the summary citation that was filed at the district magistrate's is the only written record you've retained of the offense; isn't that correct?
>
> Trooper Siko: Correct.
>
> Trial Counsel: There is not a typical police investigation report kept or you don't even have any notes that you might have put on a writing pad from that evening?
>
> Trooper Siko. No. Once I fill out the folder notes I just dispose of them once I do the report.

N.T., 4/11/12, 217. It is this last line that Appellant takes entirely out of context to support his averment. As is clear from the entirety of the discussion, Trooper Siko did not create a written record of the events that eventually led to the criminal trespass charge. Since no written report existed, the Commonwealth did not violate ***Brady***.

Appellant also contends that the Commonwealth neglected to disclose the contents of a call to Pennsylvania State Police that was transferred to that agency from Indiana County 911. The Commonwealth replies that Appellant did not request this evidence nor did they improperly withhold it from him. According to Appellant, "[t]he importance of the call to the State Police is that the 911 call that was submitted [into evidence] contains a

statement made by Tracy Singer that is, at the very least, exculpatory to the crime of felony trespass." Appellant speculates that additional similar exculpatory information was on the transferred call. The alleged exculpatory statement that was introduced was that Appellant "came home[.]" N.T., 4/10/12, at 173. Thus, Appellant argues that he could not trespass in his own home. Conveniently, Appellant ignores the full context of the recording, which reads,

> I had a friend, I guess, that somebody dropped off here to spend the night. I came home and I don't know, I guess he was drunk. I don't know him he came home, he went nuts, he kicked my dog, threw me across the room and started punching me. I kicked him out of my house, he broke my phone that's why I don't know my number, I'm using my kid's number, okay. I'm bleeding and . . .

*Id*.; *see also* N.T., 4/11/12, at 180. The full statement makes clear that Appellant did not live at the home, but was dropped off to spend the night and that the residence belonged to the victim.

We note that, as with his other ineffectiveness claims, Appellant completely fails to develop argument as to the three prongs of the ineffectiveness test. Accordingly, his layered PCRA counsel and trial counsel ineffectiveness claim fails. Furthermore, frequently staying overnight at a person's home does not establish residence. Appellant has never provided any proof that he received mail at the address. Nor has Appellant shown that he paid rent to stay at the home or aided in the payment of any other financial obligations frequently associated with being a resident. The

keeping of a duffel bag at someone else's home, as he testified to, actually supports a contrary conclusion: that one does not live at the residence. Appellant even testified that he walked home from Ms. Singer's after she told him to leave and that he did not "live that far." N.T., 4/11/12, at 408.

Ms. Singer and her son consistently testified that Appellant did not keep clothes at the home, but that he did stay overnight. Ms. Singer's son maintained that Appellant never lived with him or his mother. N.T., 4/10/12, at 184. Further, abundant evidence existed that Appellant was ordered to leave the victim's address by the victim and her son, yet Appellant gained entry after any such privilege to enter was revoked. Appellant's argument that he permanently lived at the home is untenable. His due process rights were not violated and counsel was not ineffective in failing to seek purported evidence that contradicted his own client's testimony.

Appellant next asserts that the proper venue for the November 19, 2010 trespass was Indiana County. He begins by arguing that because he was acquitted of various conduct, that behavior could not consist of a single criminal episode. As noted in footnote 2, we previously found that Appellant waived his venue claim by not contesting venue before his preliminary hearing. We add that trial counsel did raise the venue issue in a pre-trial motion and the trial court denied the challenge on the merits. The Commonwealth argued that the later events that occurred in Westmoreland

County were part of a related criminal episode because Appellant was trying to intimidate the victim into withdrawing the earlier charge of harassment that arose in Indiana County.

Appellant's underlying venue claim remains waived and he has completely failed to develop any ineffectiveness claim as to PCRA and trial counsel. The issue therefore does not entitle him to relief. **See Steele**, **supra**. Additionally, Appellant's attempt to bootstrap his acquittals to challenge venue is untenable. Obviously, trial counsel could not have contested venue as a result of an acquittal that had yet to occur. Appellant's additional venue arguments are a rambling attack on Trooper McKenzie, wherein he alleges that the trooper committed the crime of tampering with public records and failed to adequately investigate the matter. These allegations are waived since Appellant did not mention them in his *pro se* petition. **Wallace**, **supra**. Thus, PCRA counsel was not ineffective in failing to anticipate Appellant's newest venue attack.

Appellant also advances the position that trial counsel was ineffective for not objecting to the trial court's instruction during *voir dire* that counsel not mention Ms. Singer's occupation. Appellant submits that Ms. Singer was a humane officer. He reasons that had he been able to introduce this fact it would have further called into question her testimony since she claimed that he kicked one of her dogs, yet she never instituted a proceeding against him. These issues were neither raised nor fairly implicated by Appellant's

claims in his underlying petition. Therefore, his argument fails. **See Wallace**, **supra**.

The next three positions Appellant levels relate either to the trial court's comments or questioning. First, Appellant avers that the court improperly commented on the demeanor of the victim. Appellant cites no authority in his brief nor does he address the ineffectiveness test. This issue does not entitle him to relief.

The second point of complaint pertains to a discussion by the trial court with the attorneys after trial counsel made a motion for a judgment of acquittal as to several charges. Appellant does not cite what the trial court said but absurdly posits that because neither Ms. Singer nor her son testified to telling Appellant not to come back to the home, her reference on the 911 call that she wanted someone to prevent him from returning could be read to show that she did not tell him not to return. Not only does Appellant ignore that both witnesses testified that they repeatedly told him to leave, since the jury did not hear the unreferenced trial court comments, there is no prejudice.

In his penultimate claim, Appellant argues that the trial court's handing him a photograph depicting Ms. Singer's eye injury, and questioning him as to how the injury occurred and if he caused it, was improper. As Appellant already admitted to striking the victim, no prejudice exists. The final issue Appellant levels is to having to pay restitution for the victim's

cellphone. The underlying claim is waived as are any trial counsel or PCRA counsel ineffectiveness arguments as he has raised this contention for the first time on appeal. ***Wallace***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2015